591 P.2d 546

The STATE of Arizona, Appellee,

v.

Erland Earl BARTANEN, Appellant.

No. 4355.

Supreme Court of Arizona,
In Banc.

Jan. 30, 1979.

Rehearing Denied March 6, 1979.

John A. LaSota, Jr., former Atty. Gen., Robert K. Corbin, Atty. Gen., by William J. Schafer, III, and Gregory A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

·Berkman, Gordon, Kancelbaum & Levy by Bernard A. Berkman, Cleveland, Ohio, Hirsh & Shiner, P. C., by Robert J. Hirsh, Tucson, for appellant.

CAMERON, Chief Justice.

Defendant Erland Earl Bartanen was convicted by a jury and adjudged guilty in

the Superior Court of Maricopa County of five counts of commercial exhibition of obscene films in violation of A.R.S. § 13–532. We have jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

Defendant raises the following questions on appeal:

1. Was the search warrant's description of the items to be seized sufficiently particular to withstand a motion to suppress?

2. Did the affidavit and the warrant fail to establish probable cause to believe that the films were obscene?

3. Did the definition of "prurient interest" employed at the trial constitute reversible error?

4. Did the change in definition of "prurient interest" from the grand jury proceedings to that employed at trial deny defendant fair notice of the charges against him?

5. Was the application of contemporary state standards to determine what is "patently offensive" error?

6. Did an alleged violation of a stipulation during the State's closing argument constitute reversible error?

The Owl Bookstore was located in Phoenix and was owned and operated by the defendant. The Owl Bookstore sold many different kinds of printed material, including many non-obscene items. In the back of the Owl Bookstore were located several coin-operated "videomatic" booths in which the allegedly obscene films were exhibited. A person wishing to view the film would enter an individual booth and on deposit of a quarter would see two minutes of the film. To see an entire film would require a deposit of five or six quarters.

A Phoenix city magistrate, after considering the affidavit of the investigating officer and after viewing the five films, issued a warrant for the seizure of the films. As a result, defendant was indicted by the Maricopa County Grand Jury; a jury trial was held and defendant was convicted on all five counts from which convictions and judgments he appeals.

## THE SUFFICIENCY OF THE DESCRIPTION IN THE SEARCH WARRANT OF ITEMS TO BE SEIZED

The Phoenix Police Department apparently uses form affidavits to support requests for search warrants in obscenity cases and here there was an affidavit for each film. The affidavits recited that a duly commissioned police officer accompanied by a named Phoenix magistrate viewed motion pictures and that the films "contained explicit and patently offensive representations of ultimate sexual acts." A list of specific sexual acts on the forms were checked off by the affiant. The affidavits further stated that the films "contained explicit and patently offensive representations or descriptions" of other sexual or excretory functions. The affidavits finally recited that the affiant "believes, based upon his personal observation of the above-described * * * film(s) and based upon his personal experience that the * * film(s) is/are obscene as defined by § 13–531.01, Arizona Revised Statutes * * *."

■ Neither the affidavits nor the warrant named the films by title. The affidavits and search warrant did, however, describe the place to be searched (the five booths) and the things to be seized (the films in the booths). The warrant itself described the films to be seized as follows:

"1) one 8mm film being displayed in booth # 3 (only Film)

2) the only 8mm film being displayed in booth # 9

3) the only 8mm film being displayed in booth # 19

4) the only 8mm film being displayed in booth # 1

5) the only 8mm film being displayed in booth # 18.

and which is/are obscene as defined by Section 13–531.01 Arizona Revised Statutes, as amended 1974 * * *."

The affidavits, warrant and return of warrant were all dated and signed the same day, 30 September 1976.

It is defendant's contention that the affidavits and search warrant are defective in that they did not sufficiently describe the items to be seized. We disagree. The Fourth Amendment to the United States Constitution reads as follows:

"No warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

We believe that the affidavits and warrant "particularly" described "the place to be searched" and the "things to be seized." The warrant was timely, only a few hours having elapsed from the viewing of the films by the magistrate and the signing of the affidavit by the officer to the service of the warrant. The trial judge noted that there was no evidence that the films in the booths had been switched. The warrant left no doubt for the serving officer as to what was to be seized and where the items to be seized were to be found.

■■■■ Defendant contends, however, that because of the danger of prior restraint of protected expression and the history of abuse of the search and seizure power directed at unpopular expression, see *Marcus v. Search Warrants*, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961), "the constitutional requirement that warrants must particularly describe the 'things to be seized' is to be accorded the most scrupulous exactitude * * *." *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511, 13 L.Ed.2d 431, 437 (1965). See also *Roaden v. Kentucky*, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973); *Lee Art Theatre v. Virginia*, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968); *A Quantity of Books v. Kansas*, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). We have no quarrel with defendant's citation of authority and the law contained therein. We do not believe, however, that they require that we reverse the judgments in this case. The failure to describe the films by their particular titles does not make the warrant unparticular as defendant contends. We agree that while it may have been the bet-ter practice to have described the films in greater detail and list the titles if known, it was not necessary where, as here, the warrant was served within a few hours of the viewing of the films in their particularly described location. We believe that the affidavits and warrant met the standards of the Fourth Amendment and the Arizona statute, A.R.S. §§ 13–1441, et seq.

■■■ To show that the warrant could have been more specific, defendant further contends that the return of the search warrant was much more detailed in its description of each film seized than the affidavit and warrant. It logically follows that the return of service of the warrant, in most instances, will be more detailed. A.R.S. § 13–1451, in effect at the time the warrant was served, required, as does the present statute A.R.S. § 13–3921, that the officer serving the warrant make and deliver a written inventory of the item taken pursuant to the warrant. This return, of necessity, will be more detailed. The courts will look, however, to the circumstances at the time the warrant was issued to determine its sufficiency and not to what occurs after the warrant is served. *United States v. Di Re*, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). We find no error.

## DID THE AFFIDAVIT AND WARRANT SHOW PROBABLE CAUSE?

■■■ No search warrant shall be issued except upon probable cause. A.R.S. §§ 13–1443, 1444 (in effect at the time of the warrant); *State v. Robertson*, 111 Ariz. 427, 531 P.2d 1134 (1975). In the instant case, although the magistrate viewed the films before the issuance of the warrant, see *Heller v. New York*, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973), since his affidavits were not reduced to affidavit or recorded, we will not consider what his conclusions were in our determination of the sufficiency of the warrant. *Robertson*, supra.

■■■ Defendant contends that since the affidavit only asserts that the material contained "explicit and patently offensive representations" of certain sex acts and did not

assert that the films appealed to the prurient interest or that they did not have any "serious literary, artistic, political or scientific value," there was no showing of probable cause. The affidavit did contain the statement that the films offended against the statute, but defendant contends that this was not enough. We do not agree.

■ An affidavit in support of a search warrant does not have to recite each element of a crime and negate defenses to the crime the items may be offered against. The affidavit need only show that the impartial magistrate, having focused "searchingly upon the question of obscenity," *Heller*, supra, had probable cause to believe that the material was obscene. We find no error.

### THE DEFINITION OF PRURIENT INTEREST

Defendant contends that the court in its instruction to the jury applied an overbroad definition of prurient interest. Although the statute, A.R.S. § 13–531.01(2), stated that an item is obscene when it "appeals to the prurient interest," it did not define the term "prurient interest," and the trial court instructed the jury over defendant's objection as follows:

"The term appeal to the prurient interest means to excite lustful thoughts, a shameful or morbid interest in sex or nudity, arouse sexual desires or sexually impure thoughts, inclined to or disposed to lewdness, having lustful ideas or desires.

\* \* \* \* \* \*

"A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading or shameful interest in sex, a leering or longing interest. An appeal to the prurient interest is an appeal to sexual desire, not an appeal to sexual interest. An interest in sex is normal, but if the material appeals

to an abnormal interest in sex, it can appeal to the prurient interest. \* \* \*"

During their deliberations, the jury sent the following question to the trial judge:

"Under prurient interest—do all of these adjectives have to apply:

unhealthy

unholesome [sic]

morbid

degrading

shameful interest in sex

or only one of them.

"Check one—

_____all        _____only one."

In response, the trial court sent the jury the following response over the defendant's objection:

"To the Jury:

"With reference to the question, if you will reread instructions given on page 16 of the instruction which I gave, you will find I defined the term 'prurient interest' on that page. It is found in paragraphs 1 and 3 of page 16.

"The definition as used in those instructions uses descriptive terms which are set forth in the alternative. They did not require a showing of the fulfillment of all of the descriptive terms utilized.

"However, you should also remember that as to these particular instructions, you must consider them as a whole."

The statutes in effect at the time of the offense read as follows:

"§ 13–531.01. Definitions

"In this article, unless the context otherwise requires:

\* \* \* \* \* \*

"2. An item is obscene within the meaning of this article when:

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value."

Films and motion pictures are included within the statute's definition of "item." "Sexual activity" is defined as:

"(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

"(b) Patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals."

A.R.S. § 13–532 makes it a crime to produce, publish or sell obscene items.

This statute, A.R.S. §§ 13–531, et seq., followed closely the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and its constitutionality was upheld by our Court of Appeals in *State v. Navarrette*, 115 Ariz. 574, 566 P.2d 1050 (App.1977). Its constitutionality is not questioned by defendant herein.

Although there appears to be no doubt that obscenity is not protected by the First Amendment, the United States Supreme Court has had continuing difficulty in the development and refinement of the verbal standards for obscenity. See, e. g., *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966); *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957). Most writers have candidly admitted that a precise definition is impossible to obtain:

" * * * Not only is obscenity incapable of a mathematically precise definition; it is also incapable of definition with the precision of many a good, usable legal formula. A definition of burglary as breaking and entering in the nighttime for the purpose of committing a felony has a flatly tangible quality to it. There is going to be no equivalent in the law of obscenity." John P. Frank, Obscenity: Some Problems of Values and the Use of Experts, 41 Washington Law Review 631, 633 (1966).

The Legal Panel Report in the Report of the Commission on Obscenity and Pornography noted:

"*Roth* also somewhat shifts the verbalization of what is 'obscene' from that utilized under [*Regina v. Hicklin*, L.R., 3 Q.B. 360 (1868)]. Under the earlier case, the test of the 'obscenity' of material dealing with sex was whether 'the tendency of the matter * * * is to deprave and corrupt.' Under *Roth* material dealing with sex may not be deemed 'obscene' * * * unless it 'appeals to the prurient interest.' This prurient-interest material is defined in the *Roth* opinion as material 'having a tendency to excite lustful thoughts.' It would appear that, in this particular respect, the *Roth* standard may be potentially somewhat more inclusive of material than the earlier *Hicklin* test, for it would perhaps be easier to find that material excites lust, as *Roth* requires, than to find that it actually tends to 'deprave and corrupt,' as *Hicklin* required." At 312.

The American Law Institute, in its tentative draft of the Model Penal Code, also proposed a definition of obscenity "in terms of appeal of the material rather than its tendency." ALI Model Penal Code, Tent. Draft No. 6, p. 29.

"Section 207.10—Obscenity

* * * * * *

"(2) *Obscene Defined; Method of Adjudication.*

"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i. e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters. * * * Obscenity shall be judged with reference to ordinary adults * * *." ALI, Model Penal Code, Tentative Draft No. 6, 1 (1957).

Admittedly, some writers do not perceive the difference between "appeal" and "tendency" as being important. The *Roth* opinion itself found "no significant difference" between the ALI approach and other case law formulations focusing on tendency. *Roth v. United States, supra,* 354 U.S. at 487 n. 20, 77 S.Ct. at 1310, 1 L.Ed.2d at 1508

(1957). Professors Lockhart and McClure concluded that the court's resolution of the "prurient interest" problem was to adopt all common law tests of prurient interest and that the difference between "appeal" and "tendency" was not of constitutional significance. Lockhart and McClure, "Censorship of Obscenity: The Developing Constitutional Standards", 45 Minn.L.Rev. 5, 57 (1960).

■ The trial court herein used both the so-called "appeal" approach to obscenity, that is, does the material appeal to a morbid, shameful, disgusting, unhealthy, unwholesome, degrading interest in sex, as well as a "tendency" of the material to excite "lustful ideas or desires."

We believe the trial court correctly instructed the jury. A.R.S. § 13–531.01(2)(a) stated that an item is obscene when "taken as a whole [it] appeals to the prurient interest." The statute also defines specifically the material that is to be considered obscene and the court instructed the jury pursuant to statute. The position taken by the trial court that an "appeal to the prurient interest" is to be judged by both the objective nature of the material and the human instincts which it tends to arouse is correct under the facts of this case. We believe therefore that the instructions, when read as a whole, provided the jury with an adequate and sufficient direction upon which they could reach a proper verdict based on the evidence before them. We find no error.

## CHANGE IN DEFINITION OF PRURIENT INTEREST FROM GRAND JURY PROCEEDINGS TO TRIAL

■ During the presentation of the matter before the grand jury, the county attorney called an expert witness, Dr. Dean Mitchell, who was asked to give his opinion as to the films as well as to the definition of some of the words used in the statute. Dr. Mitchell stated to the jury: "I take prurient to mean an appeal to a shameful or morbid interest in nudity, sex or lewdness." Prior to trial, the defendant was provided with these portions of the grand jury transcript as part of discovery pursuant to Rule 15, Rules of Criminal Procedure, 17 A.R.S.

In its motion to strike and for mistrial, defendant contends that the definition of "appeal to prurient interest" employed at the grand jury proceedings was that contained in former A.R.S. § 13–531.01 and that since the prosecution employed a different definition at trial than that which was disclosed in pretrial discovery, the defendant was misled and denied fair notice of the charge.

Rule 13.2(a) of the Rules of Criminal Procedure provides:

"a. In General. The *indictment or information* shall be a plain, concise statement of the facts sufficiently definite to inform the defendant of the offense charged."

We believe the indictment was "sufficiently definitive" to inform the defendant of the offense charged. The definition given by Dr. Mitchell was opinion only and was not necessarily the law. The grand jury had the statute before it when it deliberated and viewed the exhibits and was able to find probable cause therefrom. Defendant not only did not have the right to rely on Dr. Mitchell's definition of prurient interest before the grand jury, but a review of the record indicates that defendant, in fact, did not rely on the doctor's testimony. The defense repeatedly objected to testimony which it felt did not comport with a constitutionally or statutorily proper definition of "prurient interest." It submitted its own proposed jury instructions to the trial court defining "prurient interest." It elicited testimony from its witnesses consistent with a proper charge and a proper defense. We find no error.

## THE APPLICATION OF CONTEMPORARY STATE STANDARDS TO "PATENT OFFENSIVENESS"

A.R.S. § 13–531.01(2) states:

"An item is obscene within the meaning of this article when:

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, *appeals to the prurient interest*; and

(b) The item depicts or describes, in a *patently offensive* way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value." (Emphasis added)

The trial court instructed the jury that "appeal to prurient interest" and "patently offensive" must be judged by contemporary state standards:

" * * * [B]oth the terms 'appeal to prurient interest' and 'patently offensive' are also to be judged by contemporary community standards. Therefore the test of those terms, as applied to Count V, is to be judged with reference to the specified group which is found in this community."

■ Defendant contends that the wording of the statute specifically restricts the application of contemporary state standards to subsection (a) concerning "prurient interest" and not to subsection (b) concerning the question of "patent offensiveness." Defendant therefore claims that only the "prurient interest" element is to be judged by contemporary state standards and that "patent offensiveness" is not. Defendant gives us no standard by which to judge "patent offensiveness."

It is apparent that our legislature relied upon the United States Supreme Court case of *Miller v. California, supra*, in drafting Arizona's obscenity statute. In *Miller*, the United States Supreme Court stated:

"The basic guidelines for the trier of fact must be: (a) whether 'the average person, applying contemporary community standards' would find that the work, taken as a whole appeals to the prurient interest (citations omitted); (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political or scientific value." 413 U.S. at 25, 93 S.Ct. at 2615, 37 L.Ed.2d at 431 (1973). By this language alone it would not be unreasonable to restrict the contemporary community standard to the determination

of "appeals to the prurient interest." The United States Supreme Court, however, continued:

"Under a National Constitution, fundamental First Amendment limitations on the powers of the States do not vary from community to community, but this does not mean that there are, or should or can be, fixed, uniform national standards of precisely what appeals to the 'prurient interest' or is 'patently offensive.' These are essentially questions of fact, and our Nation is simply too big and too diverse for this Court to reasonably expect that such standards could be articulated for all 50 States in a single formulation, even assuming the prerequisite consensus exists. * * * " 413 U.S. at 30, 93 S.Ct. at 2618, 37 L.Ed.2d at 434.

Cf. *Memoirs v. Massachusetts*, 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966). See Mr. Justice Blackmun's statement in *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977):

"The phrasing of the *Miller* test makes clear that contemporary community standards take on meaning only when they are considered with reference to the underlying questions of fact that must be resolved in an obscenity case. The test itself shows that appeal to the prurient interest is one such question * * *. The *Miller* opinion indicates that patent offensiveness is to be treated in the same way. 413 U.S. at 26, 93 S.Ct. at 2616, 2618 * * *." 431 U.S. at 301, 97 S.Ct. at 1763, 52 L.Ed.2d at 334, 335.

The only practical measure of what is "patently offensive" as well as what "appeals to the prurient interest" has to be measured not by a national standard but by contemporary community standards. Indeed, it may be impossible to require a jury to apply standards that exist beyond their particular community and in actual practice a contemporary state standard is actually the standard of the community from which the jury is drawn. In any event, it is not a national standard. *Miller, supra*.

We therefore hold that contemporary state standards, as set forth in the statute and contemporary community standards stated in *Miller, supra,* apply to a determination of what is "patently offensive" as well as what "appeals to the prurient interest." *Roth, supra.* We find no error.

### THE STATE'S CLOSING ARGUMENT

■ The defense called Dr. Martin Blinder, a psychiatrist, to testify. Defense counsel and the prosecutor entered into a stipulation concerning Dr. Blinder's testimony:

"THE COURT: For the jury's information, and with reference to Dr. Blinder's testimony, the parties have stipulated not to question Dr. Blinder on the broad issues connected with the obscenity of the five films solely because of the length of the trial. Consequently both parties have limited by stipulation their examination of Dr. Blinder to the issues surrounding the effect of sexually explicit materials. Is that correct?

"MR. HIRSH: That is the stipulation, Your Honor."

No testimony was elicited from Dr. Blinder concerning the scientific value of any of the films.

On cross-examination and redirect, Dr. Blinder was asked and answered questions concerning the effect these films would have on people. The prosecutor stated in his closing argument:

"As a matter of fact, you may choose to believe Dr. Blinder, who seemed pretty clear in his testimony, as I understood it, that is these movies don't do much for you, don't do much against you, they don't do much for you at all except cause people to act as they do. That is the best argument in the world that they have no serious scientific value. They are pretty much worthless, according to Dr. Blinder, who was brought here by Defense as a behavior modification expert."

Defense counsel objected to the argument, and in his motion for new trial urged that this argument violated the stipulation. We disagree. The terms of the stipulation in the instant case did not reach reasonable inferences which could be drawn from his testimony. Such inferences are ordinarily permissible. We find no violation of the stipulation. *State v. Young,* 109 Ariz. 221, 508 P.2d 51 (1973).

Affirmed.

STRUCKMEYER, V. C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.