Louis **POLYKOFF, IAS, Inc., Charles Stuart, Charles Clapp, Jess Emery, David Fuehring, Modernworld, Inc., Tony Dumbsky, Bill Henderson, Elise White, and Michael Kaplan, Plaintiffs,**

v.

**Thomas E. COLLINS, in his official capacity as County Attorney for Maricopa County, Arizona, Defendant.**

**No. CIV 84–1101 PHX CLH.**

United States District Court, D. Arizona.

July 10, 1984.

John H. Weston, Beverly Hills, Cal., Richard J. Hertzberg, Phoenix, Ariz., for plaintiffs.

Sandoe O. Shuch, Deputy County Atty., Bruce A. Taylor, Phoenix, Ariz., for defendant.

## MEMORANDUM OPINION AND ORDER

HARDY, District Judge.

Invoking the Civil Rights Act, 42 U.S.C. § 1983, plaintiffs Louis Polykoff, IAS, Inc., Charles Stuart, Charles Clapp, Jess Emery, David Fuehring, Modernworld, Inc., Tony Dumbsky, Bill Henderson, Elise White, and Michael Kaplan seek a declaratory judgment and injunction restraining defendant Thomas E. Collins, in his official capacity as the Maricopa County Attorney, from prosecuting them for violations of section 13–3502 of the Arizona Revised Statutes on the basis that this statute abridges rights secured by the First and Fourteenth Amendments of the United States Constitution. At the close of the hearing for the plaintiffs' application for preliminary injunction, the parties stipulated that the Court's findings of fact may be deemed conclusive and that a trial on the merits would not be necessary. The trial of this action on the merits, therefore, will be deemed consolidated with the hearings for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2). The following memorandum opinion will serve as the Court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52.

## I. FACTS

The plaintiffs are corporations and individuals who are either owners or employees of stores that sell materials, such as magazines or films, depicting adults engaged in various sexual activities. These stores are located in Maricopa County. The defendant, as the County Attorney, is charged with the duty of prosecuting persons who violate the state laws within Maricopa County.

Under A.R.S. § 13–3502, a person who knowingly sells or offers to sell any "obscene item" is guilty of a class 6 felony.

An item is obscene as the term is used in § 13–3502 when:

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value.

A.R.S. § 13–3501.2. Under Arizona's sentencing statutes, an enterprise and an individual guilty of a class 6 felony may be punished by imposition of fines of up to $1,000,000 and $150,000, respectively. A.R.S. § 13–804, 13–801.

The defendant has successfully prosecuted a number of adult book store owners for violations of § 13–3502. Fines of up to $7,500, all pursuant to plea agreements, have been imposed by the Maricopa County Superior Court. The defendant would prosecute the plaintiffs if there were probable cause to believe that they violated § 13–3502.

Plaintiffs' complaint seeks, in addition to injunctive relief, a judgment declaring § 13–3502 unconstitutional on two grounds: first, the statute's use of the term "prurient interest" to define obscenity, as it has been interpreted by the Arizona Supreme Court in *State v. Bartanen*, 121 Ariz. 454, 591 P.2d 546, *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), renders § 13–3502 overbroad and, second, the classification of violations of § 13–3502 as a class 6 felony, punishable by fines of up to $1,000,000, is a prior restraint upon the plaintiffs' freedom of speech.

## II. JURISDICTION AND ABSTENTION

■ The jurisdiction of this Court is based upon 28 U.S.C. § 1343(a)(4), which implements the Civil Rights Act. Although the plaintiffs have not been prosecuted under § 13–3502, the fact that other owners of adult book stores have been prosecuted is a sufficient threat of prosecution to create the jurisdictional predicate of an "actual controversy." *See Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974); *cf. Ellis v. Dyson*, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975). Accordingly, the Court finds that it has jurisdiction over this case.

The defendant first contends that the Court should abstain from exercise of its jurisdiction in favor of pending state litigation concerning the same controversy. It is, however, a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). Therefore, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.* at 813, 96 S.Ct. at 1244. There are three general categories of abstention, none of which are applicable to this case:

■ First, abstention is appropriate "in cases presenting a federal constitutional issue which might be mooted or presented by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). The defendant has not suggested a construction of § 13–3502 that would obviate the plaintiffs' constitutional challenge. Section 13–3502, moreover, has been authoritatively construed in its relevant parts by the Arizona Supreme Court in *State v. Bartanen*, 121 Ariz. 454, 591 P.2d 546.

■ Second, abstention is also appropriate when the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Conserv. Dist.*, 424 U.S. at 814, 96 S.Ct. at 1244. In this case, the Court is not called upon to construe state law in view of state policy. Rather, state law will be considered in the context of a federal constitutional challenge.

■ Finally, abstention is appropriate when "federal jurisdiction has been invoked for the purpose of restraining state

criminal proceedings, ... state nuisance proceedings antecedent to a criminal prosecution, which are directed at obtaining closure of places exhibiting obscene films, ... or collection of state taxes." *Id.* at 816, 96 S.Ct. at 1245 (citations omitted). At this time there is no pending state criminal prosecution or state nuisance proceeding against the plaintiffs.

■ In view of the above considerations, defendant's bid for abstention appears to be based merely upon a preference for having the constitutionality of this statute determined in state court. This is not a legitimate reason for a federal court to decline to exercise jurisdiction and, therefore, the Court will deny the plaintiffs' motion to dismiss. *See, e.g., J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482 (9th Cir.1984); *Kit-Dal Cinema v. Village of Downers Grove, Ill.,* 534 F.Supp. 81 (N.D. Ill.1981).

### III. THE OVERBREADTH ISSUE

■ The plaintiffs first contend that § 13–3502 is facially overbroad insofar as it outlaws expression protected by the First Amendment and, therefore, must be declared unconstitutional. Application of the First Amendment overbreadth doctrine to bar all enforcement of a statute is "strong medicine" and, accordingly, has been applied "with hesitation, and then only as a last resort." *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). Three requirements must be met before § 13–3502 may be declared invalid on its face. First, the statute must bring within its sweep expression protected by the First Amendment. *J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 486 (9th Cir.1984); *Wurtz v. Risley,* 719 F.2d 1438, 1440 (9th Cir. 1983). Second, the statute must not be readily subject to a narrowing construction by the state courts which might cure the constitutional deficiency. *See Ferber,* 458 U.S. at 769 n. 24, 102 S.Ct. at 3361 n. 24; *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 216, 95 S.Ct. 2268, 2276, 45 L.Ed.2d 125 (1975). Third, the deterrent effect on legitimate expression must be both real and substantial. *Erznoznik,* 422 U.S. at 216, 95 S.Ct. at 2276; *see also Ferber,* 458 U.S. at 769–70, 102 S.Ct. at 3361–62. A discussion of each of these requirements of the overbreadth doctrine will not be necessary, however, because the Court finds that § 13–3502 does not prohibit legitimate expression.

Section 13–3502 defines obscenity by adopting the tripartite test established in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2615, 37 L.Ed.2d 419 *rehearing denied,* 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). One definitional element of obscenity, thus, is that the item "appeal to the prurient interest." A.R.S. § 13–3501.2(a). The plaintiffs' first point of contention with respect to § 13–3502 is that the term "prurient interest," as defined by the Arizona Supreme Court in *State v. Bartanen,* 121 Ariz. 454, 591 P.2d 546, is unduly broad.

In *Bartanen,* the Arizona Supreme Court approved the following jury instruction concerning the meaning of "prurient interest:"

The term appeal to the prurient interest means to excite lustful thoughts, a shameful or morbid interest in sex or nudity, arouse sexual desires or sexually impure thoughts, inclined to or disposed to lewdness, having lustful ideas or desires.

. . . .

The term prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading or shameful interest in sex, a leering or longing interest. An appeal to the prurient interest is an appeal to sexual desire, not an appeal to sexual interest. An interest in sex is normal, but if the material appeals to an abnormal interest

in sex, it can appeal to the prurient interest. . . .

121 Ariz. at 458, 591 P.2d 546. Taking inventory of the various definitions of "prurient interest" developed by courts and legal authorities, the Arizona Supreme Court concluded that there were in use essentially two definitional standards for this term: the "appeal" approach, an "appeal to a morbid, shameful, disgusting, unhealthy, unwholesome, degrading interest in sex," and the "tendency" approach, a tendency "to excite lustful ideas or desires." *See* 121 Ariz. at 459–60, 591 P.2d 546. Without expressing a preference for one over the other, the court determined that the instruction was valid because it combined the two standards:

> The position taken by the trial court that an "appeal to the prurient interest" is to be judged by both the objective nature of the material and the human instincts which it tends tô arouse is correct under the facts of this case. We believe therefore that the instructions, when read as a whole, provided the jury with an adequate and sufficient direction upon which they could reach a proper verdict based on the evidence before them.

121 Ariz. at 460, 591 P.2d 546. As a result of the *Bartanen* decision, the instruction approved therein has become a standard jury instruction for obscenity prosecutions in the Arizona courts.

The plaintiffs contend that the Arizona Supreme Court's interpretation of "prurient interest" must be viewed as unconstitutional in light of the recent Ninth Circuit opinion, *J–R Distributors, Inc. v. Eikenberry*, 725 F.2d 482. In *J–R Distributors*, the Ninth Circuit was called upon to determine the validity of the State of Washington's anti-obscenity statute, which defined "prurient interest" as "that which incites lasciviousness or lust." 725 F.2d at 490. The court concluded that "prurient interest" is "a shameful or morbid interest in nudity, sex or excretion." *Id.* at 491. The court also observed that the contemporary meaning of "lust" was little more than sexual desire, "a healthy, wholesome, human reaction common to millions of well-adjusted persons in our society." *Id.* at 490. As a result, lust could not properly be regarded as a connotation of "prurient interest" and, because the Washington statute defined "prurient interest" in the alternative as lust, the statute was overbroad and unconstitutional. *Id.* at 491.

■ This Court, of course, must follow all decisions of the Ninth Circuit Court of Appeals. This Court concludes, however, that the Arizona Supreme Court's discussion of the term "prurient interest" is not inconsistent with that of the Ninth Circuit in *J–R Distributors*. The basis for the Ninth Circuit's ruling was that, under the Washington statute, materials found to incite lust might be deemed to "appeal to prurient interest" regardless of whether the materials also appealed to "a shameful or morbid interest in sex, nudity or excretion." Under this Court's reading of *Bartanen* and the jury instruction approved therein, "prurient interest" under § 13–3502 is defined as appealing to a shameful, disgusting, unhealthy, unwholesome, degrading, interest in sex as well as tending to excite lustful ideas or desires. Nowhere in the *Bartanen* opinion are these standards stated as alternatives, such that one standard may serve as a basis for a finding of "prurient interest" independently of the other. The *Bartanen* Court, perhaps, assumed that "lust" was synonymous with "a shameful or morbid interest" in sex. Regardless, the *Bartanen* Court left no room for a jury to base a finding of prurient interest upon a finding of a tendency in the material to cause lust under the contemporary meaning of that term. The jury instruction approved by the court as a proper definition of "prurient interest" repeatedly defines "prurient interest" as something abnormal, "an unhealthy, unwholesome, morbid, degrading, or shameful interest in sex." This is the definition approved by the Ninth Circuit in *J–R Distributors* and, therefore, § 13–3502 is not unconstitutionally overbroad.

## IV. THE PRIOR RESTRAINT ISSUE

Under § 13–3502, the sale of obscene items is a class 6 felony. In Arizona, a class 6 felony committed by an individual is punishable by imprisonment or a fine of up to $150,000. A.R.S. § 13–801 A. The same felony committed by an enterprise may be punished by a fine of up to $1,000,000. A.R.S. § 13–804 A.1. The plaintiffs second contention is that the criminal fine provisions, as applied to violations of § 13–3502, operate as a prior restraint upon their freedom of speech and, therefore, § 13–3502 must be declared invalid.

The plaintiffs again rely on *J–R Distributors*, where the Ninth Circuit ruled that the civil penalty provision contained within the Washington anti-obscenity statute was unconstitutional. The statute provided that once it has been determined "that a defendant has with knowledge maintained a moral nuisance, the court shall impose a civil penalty and judgment of an amount as the court may determine to be appropriate. In imposing the civil penalty, the court shall consider the willfulness of the defendant's conduct and the profits made by the defendant attributable to the moral nuisance." *J–R Distributors*, 725 F.2d at 493. The court observed that "the civil fine, which is premised in part on profits 'attributable to the moral nuisance,' may be based on profits from the *sale of protected materials* in a place that is a moral nuisance solely because obscene materials were also sold or exhibited there." *Id.* at 494. The court held "that it is impermissible, in an anti-obscenity statute, to provide that the amount of a fine shall be based, even in part, on the proceeds from constitutionally protected material." *Id.*

The Ninth Circuit's analysis employed two lines of First Amendment law. First, the civil penalty provision, which was attached only to the anti-obscenity statute, created differential treatment for First Amendment activity. The provision, thus, was presumptively unconstitutional. *J–R Distributors*, 725 F.2d at 495–496; *see Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 1375, 75 L.Ed.2d 295 (1983). Second, the civil penalty provision was perilously similar to padlocking statutes insofar as both "have the effect of preventing the dissemination of protected speech simply because obscene speech originated from the same location." *Id.* at 495. In *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), an early decision establishing the doctrine of prior restraint, the evil of prior restraint was found in an abatement statute that provided that upon violation no further publications could be made—regardless of whether the subsequent publication was non-obscene or non-libelous—unless approval was received from a local court. In *J–R Distributors*, the restraint was an economic sanction, not a padlock on a door. It was designed, nevertheless, with the same purpose of abating a moral nuisance. The civil penalty provision, thus, was deemed a form of prior restraint and therefore unconstitutional. *Id.*

*J–R Distributors* does not require that § 13–3502 be declared unconstitutional. First, unlike the Washington statute, § 13–3502 does not establish differential treatment of first amendment activity with respect to the imposition of fines. Enterprises or individuals who violate § 13–3502 are penalized under the same guidelines as any other class 6 felon. Thus, this statute does not carry with it a presumption of unconstitutionality.

Second, and most importantly, the criminal fine provisions in question, §§ 13–801 and 13–804, do not authorize sentencing judges to use criminal penalties as a form of prior restraint. As the Supreme Court noted in *Near v. Minnesota*, 283 U.S. at 711, 51 S.Ct. at 629, one objectionable aspect to abatement statutes such as a padlocking statute is that "[t]he object is not punishment, in the ordinary sense, but suppression of the offending newspaper or periodical." A statute authorizing criminal fines for violation of an obscenity law is distinguishable from a statute designed to abate moral nuisances on the basis that the former serves the legitimate

purpose of punishing illegal conduct while the latter is clearly directed toward suppression of speech. Arizona's sentencing provisions do not permit courts to use criminal fines for suppressive purposes. In *In Re Collins*, 108 Ariz. 310, 311–12, 497 P.2d 523 (1972), the Arizona Supreme Court adopted the American Bar Association's Minimum Standards for Criminal Justice, Relating to Sentencing Alternatives and Procedures, § 2.7(b) and (c):

(b) Whether to impose a fine ·in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, on conditions tailored to the means of the particular offender.

(c) In determining whether to impose a fine and its amount, the court should consider:

(i) the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;

(ii) the ability of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

(iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and

(iv) whether there are particular reasons which make a fine appropriate as a deterrent to the offense involved or appropriate as a corrective measure for the defendant.

These guidelines are designed to insure that criminal fines are used only for deterrent purposes and are not so severe as to pose an unreasonable debt upon the defendant. The criminal fine provisions applicable to violations of § 13–3502, therefore, do not constitute a prior restraint of the likeness of the civil penalty provision in *J–R Distributors*.

## V. THE CHILL ISSUE

The plaintiffs make the additional argument that the criminal fine provisions applicable to violations of § 13–3502 are unconstitutional because their effect is to "chill" the exercise of First Amendment rights. This contention is essentially that these provisions not only permit a prior restraint to result from the imposition of severe fines, but also force the plaintiffs to engage in self-censorship for fear of violating § 13–3502 and, thereby, becoming subject to the fines of § 13–801 and § 13–804.

The Court first of all questions the legitimacy of the plaintiffs' complaint of a chill, given the guidelines imposed in *In Re Collins*. But assuming that an actual chill does exist, it would seem imprudent to require, as a matter of Constitutional law, that the chill be redressed by imposing substantive limitations on the power of a state to punish individuals lawfully convicted of obscenity law violations. The chill complained of in this case is nothing more than deterrence, a state objective the legitimacy of which is implied by the fact that obscenity may be outlawed. The Supreme Court has compensated for the ambiguities in the definition of obscenity by imposing the requirement of scienter as an element of obscenity offenses. *Mishkin v. New York*, 383 U.S. 502, 511, 86 S.Ct. 958, 965, 16 L.Ed.2d 56 (1966). This Court disagrees with the plaintiffs' contention that the sentences or fines imposed for violations of obscenity laws must also be restricted to protect the exercise of First Amendment freedoms.

IT IS ORDERED denying plaintiffs' application for injunctive relief.

IT IS FURTHER ORDERED directing entry of judgment in favor of the defendant.