**Louis POLYKOFF; IAS, Inc., a corporation; Charles Stuart; Charles Clapp, etc., et al., Plaintiffs-Appellants,**

v.

**Tom COLLINS, in his official capacity as Maricopa County Attorney, Defendant-Appellee.**

No. 84-2328.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1987.

Decided May 7, 1987.

John H. Weston and G. Randall Garrou, Beverly Hills, Cal., and Richard J. Hertzberg, Phoenix, Ariz., for plaintiffs-appellants.

Bruce A. Taylor, Scottsdale, Ariz., for defendant-appellee.

Before NELSON, KOZINSKI and NOONAN, Circuit Judges.

NELSON, Circuit Judge:

This appeal concerns the district court's denial of declaratory relief and permanent injunctive relief in a first and fourteenth amendment challenge to Arizona's obscenity statute and the statutory provisions imposing fines for felonies. Appellants contend that the statutory term "prurient interest," as interpreted by the Arizona Supreme Court, is unconstitutionally overbroad, and that the felony fine provisions impermissibly restrain and chill speech. We affirm.

## I. BACKGROUND

Arizona law provides that a person is guilty of a felony who knowingly "sells, rents, lends, ... or commercially distributes or exhibits any obscene item, or offers to do any such things." Ariz.Rev.Stat. Ann. § 13–3502.2 (1978) (current version in Supp.1986).[1] At the time this action commenced, Arizona law provided that an item is "obscene" when:

(a) The average person, applying contemporary state standards would find that the item, taken as a whole, appeals to the prurient interest; and

(b) The item depicts or describes, in a patently offensive way, sexual activity as that term is described herein; and

(c) The item taken as a whole, lacks serious literary, artistic, political or scientific value.

*Id.* § 13–3501.2 (amended 1986).[2] The Arizona Supreme Court interpreted the term "prurient interest" in *State v. Bartanen,*

---

1. Several amendments made in 1986 to other parts of this (and other) subsections do not affect this appeal. *See* Ariz.Rev.Stat.Ann. § 13–3502 (Supp.1986). One amendment, however, changed the offense from a class 6 felony (carrying a potential one-and-one-half-year prison term for a first offense) to a class 5 felony (potential two-year term). *Id.; see also id.* § 13–701.B (1978). Appellants had raised an eighth amendment challenge to the former version and argued the issue in their opening appellate brief. In view of the change, appellants moved for a remand, which this court denied on October 21, 1986. Appellants subsequently withdrew their appeal on the eighth amendment ground. We express no view on any such issue.

2. A 1986 amendment to this section added the following sentence to subsection (a):

In order for an item as a whole to be found or intended to have an appeal to the prurient interest, it is not necessary that the item be successful in arousing or exciting any particular form of prurient interest either in the hypothetical average person, in a member of its intended and probable recipient group or in the trier of fact.

Ariz.Rev.Stat.Ann. § 13–3501.2(a) (Supp.1986). Because this amendment, and other changes in this section, do not affect appellants' challenge on the "prurient interest" issue, we express no view on them.

121 Ariz. 454, 591 P.2d 546, *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), discussed below, and upheld that interpretation against an overbreadth challenge.

The state's general felony fine provisions authorize the imposition of a fine, "fixed by the court," of not more than $150,000 for a felony committed by an individual and of not more than $1,000,000 for a felony committed by an "enterprise." Ariz.Rev.Stat. Ann. § 13–801.A (1978); *id.* § 13–803.A.1 (Supp.1986) (renumbering former § 13–804.1).

Appellants are corporations and individuals who are owners or employees of bookstores and video stores in Maricopa County, Arizona, that sell materials depicting adults engaged in various sexual activities. Appellee Collins, the County Attorney of Maricopa County, has successfully prosecuted several adult book store owners other than appellants under § 13–3502. The Maricopa County Superior Court has imposed felony fines on convicted defendants generally not exceeding $7,500. One individual was fined $25,000 in 1977.[3] To date, no enforcement action has been initiated against any of the appellants.

On June 18, 1984, appellants filed this action, invoking the district court's jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), (4) (1982), and seeking relief pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (1982), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 (1982). They alleged that Ariz.Rev.Stat.Ann. § 13–3502, on its face, is unconstitutionally overbroad because the state's definition of "prurient interest" encompasses expression protected by the first and fourteenth amendments. They further alleged that § 13–3502, coupled with the general felony fine provisions, is facially invalid because it acts as a prior restraint on speech and impermissibly chills speech. Appellants sought a declaration that § 13–3502 is facially unconstitutional and an injunction restraining Collins from enforcing § 13–3502 against them.

On June 22, 1984, the district court denied appellants' motion for a temporary restraining order. A hearing on appellants' motion for a preliminary injunction was set for July 5. In the meantime, on July 3, Collins filed a declaratory judgment action in the Maricopa County Superior Court, naming the appellants as defendants and seeking a declaration that § 13–3502 is constitutional. Collins also filed a motion to dismiss in the federal action, dated July 3, 1984,[4] arguing, *inter alia,* that appellants lacked standing to sue and that the district court should abstain in view of the state proceeding.

At the close of the preliminary injunction hearing on July 5, the parties stipulated that the district court's findings of fact drawn from that hearing would be conclusive. The district court thus consolidated the preliminary injunction hearing with trial on the merits pursuant to Fed.R.Civ.P. 65(a)(2). On July 10, 1984, the district court denied appellants' application for a preliminary injunction and denied the requests for declaratory and permanent injunctive relief. In reaching this conclusion, the court rejected Collins' jurisdiction and abstention arguments, held that Arizona's definition of "prurient interest" was not overbroad, and found that the felony fine provisions did not impermissibly restrain or chill speech. *See Polykoff v. Collins,* 596 F.Supp. 584, 587–91 (D.Ariz.1984).

After appellants timely appealed, on December 12, 1984, this court granted appellants' motion to stay the appeal pending the Supreme Court's decision in *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). On November 7, 1985, this court also granted the parties' joint motion for a limited remand to conduct supplemental evidentiary hearings on the question whether the felony fine provisions chill speech. The district

---

**3.** In another case, a defendant made a payment of $40,000 pursuant to a stipulation. The fine imposed under the statute in that case, however, was $1,000, plus a $370 surcharge.

**4.** The district court clerk's docket sheet contains an entry, following an entry for July 9, that erroneously indicates that the motion was filed on July 6, the day after the preliminary injunction hearing.

court conducted hearings on November 27, 1985, but made no findings on the evidence presented. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## II. DISCUSSION

### A. Jurisdiction in the District Court

■ Collins argues that the district court erred in holding that appellants had standing to bring this action, because no enforcement proceeding against appellants had been initiated and the threat of prosecution of appellants was not sufficiently real and immediate to create an actual controversy. We review de novo the district court's decision on the jurisdictional question of standing. *Fors v. Lehman*, 741 F.2d 1130, 1132 (9th Cir.1984). Underlying factual determinations are reviewed under a clearly erroneous standard. *See Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 508–09 (9th Cir.1984).

■ This case presents an actual and ripe controversy, because there was a "reasonable threat of prosecution for conduct allegedly protected by the Constitution." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, —— U.S. ——, 106 S.Ct. 2718, 2722 n. 1, 91 L.Ed.2d 512 (1986); *id.* —— U.S. at ——, 106 S.Ct. at 2726 n. 4 (Stevens, J., concurring); *Steffel v. Thompson*, 415 U.S. 452, 458–59, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974); *see also Lake Carriers' Ass'n v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972) (stating that an "actual controversy" under the Declaratory Judgment Act exists when " 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment' ") (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941)). Each of the appellants owned or worked for a bookstore or video store that sold "adult" materials. They alleged that they sell protected materials that Collins believes fall within the ambit of the statute. The district court found that Collins was actively prosecuting other owners of adult bookstores under § 13–

3502 and that he would prosecute the appellants if probable cause existed to believe that they violated that law. *Polykoff,* 596 F.Supp. at 587.

In addition, the chilling of protected speech caused by Arizona's statutory system for obscenity, if it exists as alleged, would be immediate. *See Secretary of State v. Joseph H. Munson Co.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) (stating that "where there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged"); *Laird v. Tatum*, 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325–26, 33 L.Ed.2d 154 (1972) (indicating that an allegation of chilling effect would establish a justiciable controversy if based on "a claim of specific present objective harm or a threat of specific future harm"). We thus conclude that the district court properly assumed jurisdiction over this action. *See Spokane Arcades*, 472 U.S. 491, 105 S.Ct. 2794 (implicitly finding that plaintiffs had standing to bring a § 1983 suit seeking declaratory and injunctive relief against an obscenity law prior to its enforcement against anyone); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam) (rejecting the argument of two dissenting Justices that the actual controversy requirement was not met in a suit challenging an obscenity law prior to its enforcement).

### B. Abstention

Collins also argues that the district court should have abstained in view of the declaratory action filed by Collins against the appellants in state court. Though not clearly delineated, Collins' argument partakes of several categories of abstention doctrine, which the district court found inapplicable. We treat each in turn.

■ Collins principally asks us to invoke the abstention doctrine associated with *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), when a state civil action seeks the same declaratory re-

lief on a federal constitutional question as that requested in a federal action. Our review of the district court's refusal to abstain under *Younger* is de novo. *Fresh Int'l Corp. v. Agricultural Labor Relations Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986). *But cf. Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984) (reviewing refusal to abstain under *Younger* for abuse of discretion).

■ Abstention under *Younger* is required if (1) there are pending state judicial proceedings, (2) the state proceedings implicate important state interests, and (3) the state proceedings provide an adequate opportunity to raise federal questions. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Fresh Int'l Corp.*, 805 F.2d at 1357–58. The third requirement is clearly met in this case: the declaratory judgment action filed in state court presents precisely the same question raised in the federal action. Hence we focus on the first two requirements.

■ *Younger* abstention is appropriate only if there are pending state judicial proceedings. *See Midkiff*, 467 U.S. at 238, 104 S.Ct. at 2328; *Steffel*, 415 U.S. at 461–62, 94 S.Ct. at 1216–17. Whether the state proceedings are "pending" is not determined by comparing the commencement dates of the federal and state proceedings. Rather, abstention under *Younger* may be required if the state proceedings have been initiated " 'before any proceedings of substance on the merits have taken place in the federal court.' " *Midkiff*, 467 U.S. at 238, 104 S.Ct. at 2328 (quoting *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2292, 45 L.Ed.2d 223 (1975)); *Fresh Int'l Corp.*, 805 F.2d at 1358.

■ In this case, the federal action was instituted and a motion for a temporary restraining order was denied (June 22) prior to the filing of the state action (July 3). But a denial of a temporary restraining order is not considered a proceeding of substance on the merits. *See id.* at 1358 n. 5. A federal proceeding may be deemed to

have passed beyond the " 'embryonic stage' " if the federal court has conducted extensive hearings on a motion for a preliminary injunction, *see Adultworld Bookstore v. City of Fresno*, 758 F.2d 1348, 1350–51 (9th Cir.1985), or granted such a motion, *see Midkiff*, 467 U.S. at 238, 104 S.Ct. at 2328 (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929, 95 S.Ct. 2561, 2566, 45 L.Ed.2d 648 (1975)). Here, however, Collins filed the complaint in the state action and his motion to dismiss in federal court on abstention grounds two days prior to the hearing on the preliminary injunction on July 5. Thus, we conclude that this case involves a "pending" state proceeding that satisfies the first *Younger* requirement.

■ This case, however, does not satisfy the second *Younger* requirement. *Younger* abstention is appropriate only if the federal action would affect important state interests that are " 'vital to the operation of state government.' " *Dayton Christian Schools*, 106 S.Ct. at 2723; *Fresh Int'l Corp.*, 805 F.2d at 1358; *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 542 (9th Cir.1985) (quoting *Miofsky v. Superior Court*, 703 F.2d 332, 337 (9th Cir.1983)). Although *Younger* itself involved a threatened injunction of a pending state criminal proceeding, the concerns for comity and federalism underlying *Younger* are "equally applicable to certain other pending state proceedings" in which important state interests are involved. *Dayton Christian Schools*, 106 S.Ct. at 2723. Abstention in such cases is appropriate, however, only when "the State's interests in the proceeding are so important that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Pennzoil Co. v. Texaco, Inc.*, — U.S. —, —, 107 S.Ct. 1519, 1526, 95 L.Ed.2d 1 (1987).

This case does not implicate the kind of state interest that warrants *Younger* abstention. Although Arizona's interest in the regulation of obscenity is important, the state action here is not the type of enforcement proceeding that has justified abstention under this doctrine. *See, e.g., Dayton Christian Schools*, 106 S.Ct. at

2723–24 (state administrative civil rights law proceeding); *Middlesex,* 457 U.S. at 434–35, 102 S.Ct. at 2522–23 (attorney disciplinary proceeding); *Moore v. Sims,* 442 U.S. 415, 423–35, 99 S.Ct. 2371, 2377–83, 60 L.Ed.2d 994 (1979) (child custody proceeding); *Juidice v. Vail,* 430 U.S. 327, 334–37, 97 S.Ct. 1211, 1216–18, 51 L.Ed.2d 376 (1977) (civil contempt proceeding); *Trainor v. Hernandez,* 431 U.S. 434, 444, 97 S.Ct. 1911, 1918, 52 L.Ed.2d 486 (1977) (enforcement of state welfare program); *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–07, 95 S.Ct. 1200, 1207–09, 43 L.Ed.2d 482 (1975) (state nuisance action); *Younger,* 401 U.S. at 43–49, 91 S.Ct. at 750–53 (state criminal proceeding). Nor does this case involve a challenge to "the processes by which the State compels compliance with the judgments of its courts." *Pennzoil,* —— U.S. at ——, 107 S.Ct. at 1527. Instead, the state action seeks a declaratory judgment on the same federal issue as that involved in the federal action: whether the obscenity statute violates the federal constitution. Considerations of comity do not counsel abstention under these circumstances. *See Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527, 533 (9th Cir.1984) (holding that *Younger* abstention is inappropriate when the state action seeks declaratory relief rather than enforcement of a criminal statute), *rev'd on other grounds,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986).[5]

■ In addition, federal courts have an interest in the orderly functioning of the federal judicial system and in the preservation and exercise of their jurisdiction. "[P]rinciples of comity and federalism do not require that a federal court abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." *Town of Lockport v. Citizens for Community Action at the Local Level, Inc.,* 430 U.S. 259, 264 n. 8, 97 S.Ct. 1047, 1051 n. 8, 51 L.Ed.2d 313 (1977); *see also Lake Carriers' Ass'n,* 406 U.S. at 510, 92 S.Ct. at 1757 (stating that federal courts may not escape from their duty to exercise

federal jurisdiction " 'merely because state courts also have the solemn responsibility' " of protecting federal constitutional rights) (quoting *Zwickler v. Koota,* 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967)). In establishing the remedy of declaratory relief in 1934, Congress anticipated that the federal courts would use the Declaratory Judgment Act to test the constitutionality of state criminal statutes. *Steffel,* 415 U.S. at 467–68, 94 S.Ct. at 1219–20. *Younger* abstention principles do not require federal courts to forego the exercise of their jurisdiction to decide a federal constitutional question under the Declaratory Judgment Act whenever a state prefers to litigate the question of declaratory relief in state court.

■ Appellants, of course, have requested more than just declaratory relief. They also request an injunction restraining the enforcement of § 13–3502. In the absence of any pending state enforcement proceeding, however, *Younger* is inapplicable. Collins has not brought any enforcement proceeding against appellants. To be sure, in the absence of a pending enforcement action, appellants' burden of establishing a right to injunctive relief in federal court is considerably greater than its burden of showing a right to declaratory relief. *Steffel,* 415 U.S. at 471–72, 94 S.Ct. at 767; *cf. Samuels v. Mackell,* 401 U.S. 66, 72–73, 91 S.Ct. 764, 767–68, 27 L.Ed.2d 68 (1971) (same standard for injunctive and declaratory relief when a state enforcement action is pending). But that inquiry concerns an assessment of the merits of appellants' claims, not the propriety of abstention. *See Lake Carriers' Ass'n,* 406 U.S. at 509 n. 13, 92 S.Ct. at 1756 n. 13 (distinguishing the two inquiries); *Zwickler,* 389 U.S. at 254, 88 S.Ct. at 399 (same). We thus conclude that *Younger* abstention is inappropriate in this case.

■ Collins further argues that the district court should have abstained so that the state court could have the opportunity

---

5. In *Playtime Theaters,* the Supreme Court did not mention the abstention issue and reversed on the merits. On remand, the Ninth Circuit vacated its earlier opinion "to the extent it is inconsistent" with the Supreme Court's decision, thus leaving its abstention holding intact. *See Playtime Theaters, Inc. v. City of Renton,* 789 F.2d 804 (9th Cir.1986).

to give a narrowing construction to the obscenity law to avoid any potential overbreadth. This argument, in part, invokes the abstention doctrine associated with *Railroad Commission v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *Pullman* abstention is appropriate if "difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Midkiff,* 467 U.S. at 236, 104 S.Ct. 2327; *see McMillan v. Goleta Water Dist.,* 792 F.2d 1453, 1458 (9th Cir.1986), *cert. denied,* ── U.S. ──, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987). We review the application of *Pullman* abstention doctrine for abuse of discretion. *Fresh Int'l Corp.,* 805 F.2d at 1356 n. 2; *McMillan,* 792 F.2d at 1458.

We believe that our decision on this issue is controlled by the Supreme Court's recent decision in *Spokane Arcades,* 472 U.S. 491, 105 S.Ct. 2794. There, three concurring Justices argued that the district court should have abstained under *Pullman* from hearing a first amendment challenge to the definition of "prurient interest" in a four-day-old state obscenity law that the state courts had not yet interpreted. *Id.* at 507–10, 105 S.Ct. at 2804–05 (O'Connor, J., concurring) (arguing that "the state courts should have been afforded an opportunity to construe the [state] moral nuisance law in the first instance"). This argument, however, did not persuade the five Justices who reached the merits of the challenge. *See Spokane Arcades,* 472 U.S. at 493–507, 105 S.Ct. at 2796–2804, *id.* at 510, 105 S.Ct. at 2805 (Brennan, J., dissenting).

 Indeed, the case for *Pullman* abstention here is far less compelling than in *Spokane Arcades* because the Arizona Supreme Court has construed the term "prurient interest" and upheld the definition against an overbreadth challenge in *State v. Bartanen,* 121 Ariz. 454, 458–60, 591 P.2d 546, 550–52, *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). *See Orr v. Orr,* 440 U.S. 268, 278 n. 8, 99 S.Ct. 1102, 1111 n. 8, 59 L.Ed.2d 306 (1979) (holding that *Pullman* is inapplicable when

the state court has already considered the issue). Similarly, the Arizona Supreme Court has defined the scope of application of its felony fine provisions in *In re Collins,* 108 Ariz. 310, 312–13, 497 P.2d 523, 525–26 (1972). An "abstract possibility" that the Arizona court might render adjudication of the federal question unnecessary does not require *Pullman* abstention. *See McMillan,* 792 F.2d at 1459; *see also Kusper v. Pontikes,* 414 U.S. 51, 55–56, 94 S.Ct. 303, 306–07, 38 L.Ed.2d 260 (1973) (declining to abstain under *Pullman* when a state court had already construed the statute). Thus, abstention under *Pullman* is not required here.

 Finally, this case does not fall within the narrow *Colorado River* doctrine, often associated with the abstention inquiry, which permits dismissal of the federal action in view of a concurrent state proceeding on the basis of a concern for judicial administration and efficiency. *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–18, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Mobil Oil,* 772 F.2d at 541; 17 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4247, at 502–03, 515–19 (1978); *id.* § 4247, at 177–83 (Supp.1986). The "exceptional" circumstances required to invoke this doctrine are not present here. *See Colorado River,* 424 U.S. at 818, 96 S.Ct. at 1246 (noting, *inter alia,* the relevant factors of the inconvenience of the federal forum and the order in which jurisdiction was obtained by the concurrent forums); *see also Morris H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 16, 23–26, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983) (noting additional factors of whether state or federal law supplies the rule of decision and whether federal interests outweigh state interests). We therefore conclude that the district court properly reached the merits of this case.[6]

### C. "Prurient Interest"

 Arizona's obscenity statute, § 13–3501.2, quoted above, leaves the term

---

**6.** Collins' argument that appellants failed to state a claim is without merit.

"prurient interest" undefined and otherwise tracks the Supreme Court's definition of obscenity set forth in *Miller v. California,* 413 U.S. 15, 24, 93 S.Ct. 2607, 2614, 37 L.Ed.2d 419 (1973). The statutory term itself is thus not constitutionally infirm. *See Spokane Arcades,* 472 U.S. at 505 n. 13, 105 S.Ct. at 2803 n. 13. Appellants argue instead that the construction given the term "prurient interest" by the Arizona Supreme Court in *State v. Bartanen,* 121 Ariz. 454, 591 P.2d 546, *cert. denied,* 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), is unconstitutionally overbroad. They argue that the jury instructions approved in *Bartanen* permit conviction on the basis of items that excite only normal sexual thoughts and desires, items that are constitutionally protected. They thus contend that the district court should have found the statute fatally overbroad and facially null and void. We review de novo the district court's determinations of state law and federal constitutional law. *In re McLinn,* 739 F.2d 1395, 1397 (9th Cir.1984) (en banc).

■ Use of first amendment overbreadth doctrine to invalidate a statute on its face is " 'strong medicine.' " *New York v. Ferber,* 458 U.S. 747, 769, 102 S.Ct. 3348, 3361, 73 L.Ed.2d 1113 (1982) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973)). The remedy of total invalidation is generally reserved for cases in which the individual's own speech or expressive conduct may validly be prohibited or sanctioned, because the statute also threatens others not before the court who desire to engage in protected expression but who may be deterred from doing so. *Spokane Arcades,* 472 U.S. at 503, 105 S.Ct. at 2802. In such cases, the challenged statute must be "substantially" overbroad in relation to its legitimate reach. *Id.* at 503 n. 12, 105 S.Ct. at 2802 n. 12. However, when the individual challenging the statute seeks to engage in protected expression, or seeks to engage in both protected and unprotected expression, partial invalidation is the proper remedy, absent countervailing considerations. *Id.* at 504, 105 S.Ct. at 2802. The statute should be invalidated only insofar as the statute reaches protected expression. *Id.* Although under these principles it appears that partial invalidation would have been the appropriate remedy for any overbreadth in this case, we believe that the construction of the term "prurient interest" in *Bartanen* does not encompass expression protected by the first amendment.

*Spokane Arcades* both illustrates the principles governing total and partial invalidation in first amendment overbreadth cases and supplies the basis for our analysis of the *Bartanen* instructions. In that case, the Ninth Circuit struck down in its entirety a Washington state statute that defined "prurient interest" as "that which incites lasciviousness or lust." *See J-R Distributors, Inc. v. Eikenberry,* 725 F.2d 482, 489–93 (9th Cir.1984). The court reasoned that the use of the word "lustful" in the definition of "prurient interest" in *Roth v. United States,* 354 U.S. 476, 487 & n. 20, 77 S.Ct. 1304, 1310 & n. 20, 1 L.Ed.2d 1498 (1957), was not intended to reach normal, healthy sexual desires, and that the commonplace understanding of the word "lust" had since changed to mean normal, healthy sexual desires. *J-R Distributors,* 725 F.2d at 490–91. Because the statute thus encompassed protected expression and there was no readily apparent narrowing construction, the court invalidated the entire statute. *Id.* at 493.

In *Spokane Arcades,* the Supreme Court reversed. The Court agreed that the term "prurient interest" and the word "lustful" as used in *Roth* do not encompass normal, healthy sexual desires, but instead refer to " 'a shameful or morbid interest in nudity, sex, or excretion.' " *Spokane Arcades,* 472 U.S. at 498–99, 105 S.Ct. at 2799 (quoting ALI, Model Penal Code § 207.10(2) comment (Tent. Draft No. 6, 1957)). The Court appeared to disagree with the conclusion that "lustful" in the statute referred only to healthy sexual interests and suggested that the lower court may have erred in its interpretation of "lustful" by ignoring dictionary definitions. *See id.* at 499–500 & n. 10, 105 S.Ct. at 2799–2800 & n. 10. The Court, however, pretermitted its discussion of whether the statute was uncon-

stitutionally overbroad, because it concluded that partial invalidation would have been the appropriate remedy for any overbreadth. *Id.* at 500–07 & n. 12, 105 S.Ct. at 2800–04 & n. 12. The Court indicated that on remand the Ninth Circuit should determine whether the word "lust" in fact retained any of its *Roth* connotation, *see id.* at 500 & n. 10, 504–05, 105 S.Ct. at 2802, and invalidate the statute "only insofar as the word 'lust' is taken to include a normal interest in sex," *see id.* at 504–05, 105 S.Ct. at 2802. The parties settled on remand.

In *Bartanen,* the jury instructions stated:

> "The term appeal to the prurient interest means to excite lustful thoughts, a shameful or morbid interest in sex or nudity, arouse sexual desires or sexually impure thoughts, inclined to or disposed to lewdness, having lustful ideas or desires.
>
> * * * * * *
>
> "A prurient interest in sex is not the same as a candid, wholesome, or healthy interest in sex. Material does not appeal to the prurient interest just because it deals with sex or shows nude bodies. Prurient interest is an unhealthy, unwholesome, morbid, degrading, or shameful interest in sex, a leering or longing interest. An appeal to the prurient interest is an appeal to sexual desire, not an appeal to sexual interest. An interest in sex is normal, but if the material appeals to an abnormal interest in sex, it can appeal to the prurient interest."

121 Ariz. at 458, 591 P.2d at 550 (quoting jury instructions). The *Bartanen* jury requested clarification on whether all of the following adjectives had to apply: unhealthy, unwholesome, morbid, degrading, and shameful. The trial judge replied that the descriptive terms in the instructions are set forth in the alternative, and noted that the instructions were to be considered as a whole. *Id.*

Appellants argue that these instructions would permit conviction on the basis of items that appeal only to normal, healthy sexual desires. We disagree. The instructions include the ALI definition approved in *Spokane Arcades.* They also draw on the word "lustful" and other terms (such as "desire," "longing," and "lewd") used in *Roth. See Roth,* 354 U.S. at 487 n. 20, 77 S.Ct. at 1310 n. 20; *see also Spokane Arcades,* 472 U.S. at 496–97, 105 S.Ct. at 2798 (discussing terms used in the *Roth* footnote). We need not decide whether the word "lustful," taken alone, might reach protected expression in some connotations. *See Spokane Arcades,* 472 U.S. at 499–500 & n. 10, 503 n. 12, 504–05, 105 S.Ct. at 2799–2800 & n. 10, 2802 n. 12, 2802–03; *id.* at 509, 105 S.Ct. at 2805 (O'Connor, J., concurring); *J–R Distributors,* 725 F.2d at 490–92. We believe that it retains its original *Roth* connotation in at least some usages. *See id.* at 500 & n. 10, 105 S.Ct. 2800 & n. 10 (suggesting as much); *id.* at 509, 105 S.Ct. at 2805 (O'Connor, J., concurring). *Compare* Webster's Third New International Dictionary 1829 (unabridged ed. 1981) (*"prurient"*: *"1 a:* marked by restless craving: itching with curiosity … *b:* having or easily susceptible to lascivious thoughts or desires … *c:* tending to excite lasciviousness …"), *with id.* at 1274 (*"lascivious"*: *1:* inclined to lechery: LEWD, LUSTFUL … *2:* tending to arouse sexual desire: LIBIDINOUS, SALACIOUS …"), *id.* at 1348 (*"lust"*: *1 obs a:* PLEASURE, GRATIFICATION, DELIGHT … *b:* personal inclination: WISH, WHIM … *c:* VIGOR, FERTILITY … *2:* sexual desire esp. of a violent self-indulgent character: LECHERY, LASCIVIOUSNESS … *3 a:* an intense longing: CRAVING … *b:* EAGERNESS, ENTHUSIASM … *syn* see DESIRE"), *and id.* (*"lustful"*: full of lust: excited or characterized by lust: having or expressing powerful unsatisfied desire or craving … *esp:* LECHEROUS, LIBIDINOUS …"). Similarly, we need not decide whether the distinction made in the instructions between "sexual desire" and "sexual interest," standing alone, would pass constitutional muster. The instructions upheld in *Bartanen* repeatedly exclude normal, wholesome, healthy sexual desires from the scope of "prurient interest." The limiting construction absent in *J–R Distributors/Spokane Arcades* is clearly present here. Therefore, we reject the con-

tention that the "prurient interest" definition in *Bartanen* is unconstitutionally overbroad.

### D. The Felony Fine Provisions

Appellants advance several arguments against Arizona's general felony fine provisions, which authorize fines of up to $150,000 for individuals and $1,000,000 for enterprises for all felonies, including violations of the obscenity statute. Ariz.Rev. Stat.Ann. § 13–801.A (1978); *id.* § 13–803.-A.1 (Supp.1986). Although they employ the two rubrics of prior restraint and chilling effect, we discern three separate challenges.

### 1. Prior Restraint

Appellants first contend that the felony fine provisions authorize a prior restraint on speech. They argue that the statutory authorizations of high fines permit the forced closure, if not the bankruptcy, of businesses selling adult materials. The imposition of such bankrupting fines, in addition to restraining the sale of the obscene materials that formed the basis of the conviction, would also impermissibly restrain the sale of (1) arguably obscene adult materials that have not yet been deemed "obscene" by a court of law, (2) constitutionally protected, non-obscene adult materials, and (3) other protected materials that happen to be sold at the same place or by the same individual. Appellants argue that the felony fine provisions are thus indistinguishable from the so-called padlocking laws held facially invalid in *Near v. Minnesota*, 283 U.S. 697, 701–03, 722–23, 51 S.Ct. 625, 633, 75 L.Ed. 1357 (1931) (striking down statute providing for permanent injunction of publication of newspaper deemed a nuisance), and *Vance v. Universal Amusement Co.*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam) (invalidating law providing for indefinite injunction of movie exhibitions at place of nuisance without prior final judicial determination of obscenity). *See J–R Distributors*, 725 F.2d at 494–95 (listing cases).

■ Appellants' prior restraint argument is unusual insofar as the alleged prior restraint arises from the imposition of a fine, not an injunction. There is a historical distinction between prior restraints and criminal penalties in the first amendment setting, which has both practical consequences and a theoretical basis:

> The presumption against prior restraints is heavier—and the degree of protection broader—than that against limits on expression imposed by criminal penalties. Behind the distinction is a theory deeply etched in our law: a free society prefers to punish the few who abuse rights of speech *after* they break the law than to throttle them and all others beforehand.

*Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558–59, 95 S.Ct. 1239, 1246–47, 43 L.Ed.2d 448 (1975); *see also Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976). Hence we believe that the heavier presumption of invalidity for prior restraint laws is inappropriate for the felony fine provisions at issue here.

In any event, the fine provisions, properly understood, do not authorize the imposition of a prior restraint. As criminal penalties, the fine provisions punish illegal activity. *See Near*, 283 U.S. at 708, 51 S.Ct. at 628 ("Liberty of speech, and of the press, is ... not an absolute right, and the State may punish its abuse."). Contrary to appellants' assertions, Arizona does not permit the imposition of potentially bankrupting $1,000,000 fines on "mom and pop" video stores. In *In re Collins*, 108 Ariz. 310, 497 P.2d 523 (1972), the Arizona Supreme Court adopted the American Bar Association's Minimum Standards for Criminal Justice, Relating to Sentencing Alternatives and Procedures § 2.7(b), (c):

> (b) Whether to impose a fine in a particular case, its amount up to the authorized maximum, and the method of payment should remain within the discretion of the sentencing court. The court should be explicitly authorized to permit installment payments of any imposed fine, on conditions *tailored to the means of the particular offender.*

(c) In determining whether to impose a fine and its amount, the court should consider:

(i) *the financial resources of the defendant and the burden that payment of a fine will impose, with due regard to his other obligations;*

(ii) the *ability* of the defendant to pay a fine on an installment basis or on other conditions to be fixed by the court;

(iii) the extent to which payment of a fine will interfere with the ability of the defendant to make any ordered restitution or reparation to the victim of the crime; and

(iv) whether there are particular reasons which make a fine *appropriate as a deterrent* to the offense involved *or appropriate as a corrective measure* for the defendant.

*Collins,* 108 Ariz. at 312–13, 497 P.2d at 525–26 (emphasis added).

As the district court observed, these guidelines ensure that the fines will be used for deterrent purposes and not for suppressive purposes. In fact, what evidence appears in the record indicates that fines imposed under the statute have been modest—generally less than $7,500. There is no evidence that the $25,000 fine imposed in a 1977 case was inappropriate in view of the circumstances of that case.

■ Hence, we find no justification for facially invalidating the felony fine provisions on the ground that they authorize a prior restraint. The upper limits provide the requisite flexibility to achieve the deterrent function for both minor and major offenders. Arizona has adopted sentencing guidelines that preclude the possibility of forcing out of business defendants who are convicted under the obscenity statute. If a case should arise in which an extremely high fine threatens to force the closure of a business and thereby to act as a prior restraint, the fine provisions could be challenged as applied.[7] At this time, however, we cannot discern in advance what fine amounts might constitute a prior restraint

in the variety of circumstances attending different convicted defendants. *Cf. Dayton Christian Schools,* 106 S.Ct. at 2726 n. 4 (Stevens, J., concurring) (arguing that a first amendment suit that depended on what remedy was ultimately fashioned in a state administrative proceeding may not be ripe, because "[t]o hold otherwise would require the District Court to detail the constitutionally permissible range of the Commission's sentencing discretion in advance of any facts regarding the School's discriminatory conduct or any explanation by the Commission justifying the relief it might fashion").

*2. Overbreadth*

■ Appellants include a second argument under the headings of prior restraint and chilling effect: they allege that the felony fine provisions impermissibly allow fines to be based in part on profits derived from the sale of protected materials. The mere fact that consideration of a defendant's resources may lead to a fine drawing incidentally on some assets earned through lawful activities does not advance the prior restraint argument, as long as the fine does not pose a threat of closing a business. As indicated below, this argument is also distinct from appellants' challenge based on a chilling effect. Hence we treat this argument separately.

At the district court proceedings, appellants relied heavily on the treatment of a similar argument in *J–R Distributors,* 725 F.2d at 493–96, which the Supreme Court later deemed unnecessary to the disposition of the case. *See Spokane Arcades,* 472 U.S. at 495 n. 5, 105 S.Ct. at 2797 n. 5. Although this portion of *J–R Distributors* is now without precedential value, we believe that it still provides a useful starting point for our discussion.

The *J–R Distributors* court held invalid a civil fine provision that *required* a court to base the fine in part on a consideration of the profits attributable to the place of the moral nuisance, thus encompassing profits

---

**7.** An extremely high fine might also implicate the eighth amendment, which protects appellants from punishment that is disproportionate

to the crime committed. *See Solem v. Helm,* 463 U.S. 277, 284, 103 S.Ct. 3001, 3006, 77 L.Ed.2d 637 (1983).

from the sale of protected and unprotected items. The court concluded that the provision swept unnecessarily broadly by focusing on the place where the obscene materials were disseminated, instead of on the unprotected materials themselves. *J–R Distributors*, 725 F.2d at 494–95 (noting the similar effect of padlocking laws, which also impose burdens on the distribution of all materials at the place of the nuisance). The court also noted that the provision did not "merely establish the minimum and maximum amounts of civil penalties," as in other civil fine provisions, but singled out first amendment activity for differential treatment, thereby creating a presumption of invalidity. *See id.* at 495 (citing *Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983)). Finally, the court stated that requiring the amount of the fine to be based, even in part, on profits from protected materials was unnecessary to the achievement of any legitimate state goal. *See id.* The dissenting judge, believing that this part of the court's decision was unnecessary, nonetheless stated that he would have agreed that the fine provision was overbroad and incapable of a narrowing construction, had the issue been necessary to reach. *See id.* at 498 (Wallace, J., dissenting).

Arizona's felony fine provisions are distinguishable. First, unlike the fine provision in *J–R Distributors*, the Arizona fine provisions do not impose any special requirement that a fine must be based on profits derived from the sale of both protected and unprotected materials. They permit consideration of a defendant's resources generally, are applicable to all felony violations, and do not single out first amendment activity for differential treatment. The Arizona provisions thus do not carry a presumption of invalidity. *See Minneapolis Star*, 460 U.S. at 581–93, 103 S.Ct. at 1369–76 (striking down a state tax providing for differential treatment of the press).

Second, the provision at issue in *J–R Distributors* required fines to be based on all profits produced at the place of the moral nuisance. This requirement was clearly unnecessary to the achievement of any legitimate state goal: requiring a fine to be based, even in part, on the amount of profits from protected materials imposed a penalty on the sale of those materials. Here, however, the Arizona sentencing guidelines focus on deterring illegal activity, and thus are more narrowly tailored to the achievement of a legitimate state goal. Furthermore, under the guidelines, consideration of a convicted defendant's general resources serves two purposes. As discussed above, it prevents a court from imposing a fine that is unduly harsh in view of the defendant's ability to pay.[8] It also recognizes that, in the attempt to fashion a monetary penalty that will impose an appropriate measure of punishment and deterrence in any particular case, the defendant's general resources are a relevant factor, as they are in non-speech contexts. *See Bearden v. Georgia*, 461 U.S. 660, 670, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221 (1983) (stating that "the sentencing court can consider the entire background of the defendant, including his employment history and financial resources"); *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 22, 93 S.Ct. 1278, 1290, 36 L.Ed.2d 16 (1973) (stating that "[s]entencing judges may, and often do, consider the defendant's ability to pay").

We thus decline to adopt appellants' suggestion that a fine provision for obscenity violations is facially overbroad unless it either specifically excludes all resources derived from the sale of protected materials or specifically limits the fine to profits from the sale of the unprotected materials. *See 511 Detroit Street, Inc. v. Kelley*, 807 F.2d 1293, 1297, 1299 (6th Cir. 1986) (rejecting a challenge to a Michigan felony fine provision and stating that "[t]he fact that a person does some business disseminating protected materials cannot immunize that person from large fines that

---

**8.** As noted above, *supra* note 7, the eighth amendment also prevents a court from imposing an excessive penalty.

may be imposed for violation of criminal law").

### 3. The Alleged Chilling Effect

Appellants' final argument is that the felony fine provisions impermissibly chill protected speech because of the threat of large fines. They contend that, in the legitimate attempt to punish and deter the distribution of unprotected materials, *see, e.g., Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 54–55, 57, 93 S.Ct. 2628, 2633, 2635, 37 L.Ed.2d 446 (1973); *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 441, 77 S.Ct. 1325, 1327, 1 L.Ed.2d 1469 (1957), the existence of the high felony fine provisions has the incidental effect of inhibiting first amendment rights—the distribution of adult materials that are not "obscene." *See Younger*, 401 U.S. at 51, 91 S.Ct. at 754. In support, appellants point to statements in the record that, in response to Collins' announcement in March 1985 that he intended to prosecute actively under § 13–3502, owners of approximately 80% of the video stores in Maricopa County that carried adult materials pulled all of those materials off the shelves, even though they believed that some were non-obscene and thus constitutionally protected.

■ This argument is considerably weakened by the correct understanding of the felony fine provisions as limited by the ABA sentencing guidelines. Fears of $150,000 fines for financially unable individuals or $1,000,000 fines for "mom and pop" stores are unfounded. In fact, as noted above, the fines actually imposed to date have been modest. The record does not indicate that any stores pulled adult materials off the shelves on the basis of a correct understanding of Arizona's felony fine system. Any chilling effect that may have been based on an incorrect understanding of the law is not constitutionally

cognizable. *Cf. Laird*, 408 U.S. at 13–14, 92 S.Ct. at 2325–26 (holding that an allegation of mere "subjective 'chill'" does not create a justiciable controversy).

■ Whatever chill may arise from Arizona's felony fine system, properly understood, is attributable to the state's legitimate deterrent goal. Any criminal obscenity statute "will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene." *Smith v. California*, 361 U.S. 147, 154–55, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959). Those who conduct their affairs close to the boundary of proscribed activity necessarily incur some risks. Although certain criminal penalties might impermissibly chill the exercise of first amendment rights, we are not called upon to delineate the permissible range of measures that a state may employ to regulate obscenity. We hold only that appellants have failed to demonstrate that the effect of Arizona's felony fine provisions, properly understood, on protected expression is not "minor in relation to the need for control of the conduct and the lack of alternative means for doing so." *Younger*, 401 U.S. at 51–52, 91 S.Ct. at 754.[9]

### CONCLUSION

For the reasons discussed above, we affirm the district court's decision denying appellants' request for declaratory and permanent injunctive relief.

**AFFIRMED.**

---

9. Appellants' observation that the potential chill is heightened by the difficulty of determining on which side of the "dim and uncertain" obscenity line a court will deem that a particular item falls, *see Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 66, 83 S.Ct. 631, 637, 9 L.Ed.2d 584 (1963), affords no additional support here. Arizona's definition of obscenity tracks the Su-

preme Court's definition and is thus not unconstitutionally vague. In addition, potential chill is mitigated by the requirement of scienter for a violation of an obscenity statute. *See Mishkin v. New York*, 383 U.S. 502, 510–12, 86 S.Ct. 958, 964–65, 16 L.Ed.2d 56 (1966); Ariz.Rev.Stat. Ann. §§ 13–3501.3, 13–3502 (Supp.1986).