786 P.2d 1037

**STATE of Arizona, Appellee,**

v.

**Ronald E. LICHON, Appellant.**

**No. 1 CA–CR 88–158.**

Court of Appeals of Arizona,
Division 1, Department D.

Nov. 2, 1989.

As Corrected Nov. 2, Nov. 3 and
Nov. 20, 1989.

Review Denied March 6, 1990.

Robert K. Corbin, Atty. Gen. by Jessica G. Funkhouser, Chief Counsel, Crim. Div. and Joseph T. Maziarz, Asst. Atty. Gen., Phoenix, for appellee.

Richard J. Hertzberg, Phoenix, for appellant.

## OPINION

KLEINSCHMIDT, Presiding Judge.

The defendant, Ronald E. Lichon, appeals from a conviction of one count of renting an obscene item in violation of A.R.S. section 13–3502 (Supp.1988). The trial court designated the offense a misdemeanor and placed the defendant on probation for three years. We affirm and publish this opinion to advise trial judges to instruct jurors in obscenity cases that if the jury chooses to review allegedly obscene items during deliberations, they should not do so in a piecemeal fashion. Such an admonition is meant to ensure that the items are considered as a whole, as required by statute and Supreme Court decision. We discuss this issue in more detail below when we deal with the propriety of allowing the jury access to the videotapes and a VCR player. The case presents a number of other issues.

The facts are as follows. An investigator for the Maricopa County Attorney's Office rented two videotapes entitled "Between the Cheeks" and "Black Throat" from the defendant's video store. The defendant was charged with two counts of renting obscene items and one count of possessing an obscene item with intent to rent. After a trial by jury, the defendant was convicted for renting "Between the Cheeks," but acquitted of possessing to rent and renting "Black Throat."

## ISSUES RELATING TO THE STATE-WIDE STANDARD FOR THE DEFINITION OF WHAT IS OBSCENE

The Arizona statute that defines obscenity states in relevant part that:

An item is obscene within the meaning of this chapter when all of the following apply:

(a) The average person, applying *contemporary state standards*, would find that the item, taken as a whole, appeals to the prurient interest. In order for an item as a whole to be found or intended to have an appeal to the prurient interest, it is not necessary that the item be successful in arousing or exciting any particular form of prurient interest either in the hypothetical average person, in a member of its intended and probable recipient group or in the trier of fact.

(b) The average person, applying *contemporary state standards*, would find that the item depicts or describes, in a patently offensive way, sexual activity as that term is described in this section.

(c) The item, taken as a whole, lacks serious literary, artistic, political or scientific value.

A.R.S. § 13–3501(2) (Supp.1988) (emphasis added).

This statute was adopted from an almost identical tripartite test set out in the United States Supreme Court decision in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). For ease of reference, we will therefore refer to the requirements laid down by our statute as the *Miller* test.

The defendant's first argument involves the first and second parts of the *Miller* test. He insists that the prosecutor improperly told the jury that in determining whether an item is obscene, they should consider the standards of their own community. At final argument, the prosecutor said

You folks are Maricopa County people. You will be allowed, and the Court will so tell you, that you can divine the standards of the state, which are shown here, applying contemporary state standards from the communities that you are most familiar with.

\*   \*   \*   \*   \*   \*

[Defense counsel] said, 'Hey, you've got to apply state standards. That's what it says.' But I'm saying to you, because I can say it to you and he cannot object to it, because the law also says you folks don't have to reach up to Kingman and down to Douglas and over to Snowflake and say, 'Gee, I wonder what their standards are?'

The law says you folks can figure them out from your own community where you live, where you work [and] where you send your kids to school. That's your standard. It may say state,

but it can be Tempe, Mesa, Scottsdale, wherever you live. Apply that.

The defendant states that this is an incorrect statement of the law and constituted prosecutorial misconduct because it violated a pretrial order in limine.

That order prohibited:

Any mention of the feelings or standards of any of the neighbors or people in the vicinity. (The test is the standards of the entire State, not just one locale.)

■ The defendant did not preserve this issue for appeal. His counsel concedes that he did not object to the prosecutor's comments. It is generally true that an objection is not required when a motion in limine has been made, *State v. Coleman,* 122 Ariz. 99, 101, 593 P.2d 653, 655 (1979). In determining whether a motion in limine has preserved an issue on appeal, "[t]he essential question is whether or not the objectionable matter is brought to the attention of the trial court in a manner sufficient to advise the court that the error was not waived." *State v. Briggs,* 112 Ariz. 379, 382, 542 P.2d 804, 807 (1975). In this instance, the defendant's failure to object to the closing argument deprived the court of a meaningful opportunity to consider the issue he now raises. This is especially true since the motion in limine was a perfunctory one, made well before trial and accompanied by many other motions that were considered in summary fashion. The judge who tried the case was not the same judge who granted the motion in limine. Counsel may not sit back and allow error to occur when a prompt objection might have allowed the court to cure the problem. *See, e.g., State v. Holder,* 155 Ariz. 83, 745 P.2d 141 (1987); *State v. Lujan,* 136 Ariz. 326, 666 P.2d 71 (1983). Because the matter involves an allegation of prosecutorial misconduct, and because we must consider whether fundamental error occurred, we will examine the merits of the defendant's claim of error.

■ In addition to the order in limine, the instructions which the court gave, and did not give, also bear on the problem. The trial court gave the defendant's requested instruction number 6, which read:

In determining whether the material is patently offensive, you must determine whether it is patently offensive according to contemporary State standards.

Whether material is patently offensive according to contemporary State standards is determined by whether or not it is beyond the tolerance of the average person in the State.

In determining patent offensiveness, you must not judge by your own level of tolerance or the jury's tolerance, but rather the tolerance of the average person in the State of Arizona.

The trial court refused the State's Requested Instruction number 18, which reads:

The jury is to decide what judgment would be made by the application of adult contemporary state standards by this average person. Contemporary state standards simply provide the measure against which the jury decides the questions of appeal to prurient interest and patent offensiveness.

In deciding what conclusion the average person, applying adult contemporary state standards, would reach in these respects, the jury is entitled to draw on its own knowledge of the views and sense of the average person in the community from which they come.

The instruction was refused, as covered by the Defendant's Requested Instruction number 6, without extensive argument and without discussion of how the jury was supposed to determine the statewide standard.

Argument on the law ought to be confined to the instructions the court gives. The prosecutor was presumptuous in telling the jury they could determine the statewide standard from what they knew of their own community when the judge had refused the state's instruction to that effect. The prosecutor's argument was also a violation of the order in limine, although it is by no means apparent that the violation was deliberate. The case was tried by a different prosecutor than the one who was representing the state when the order in limine was entered. Also to be weighed

in the balance is whether the prosecutor's argument misstated the law. While his comment was a bit unfocused, we do not believe it was necessarily a misstatement of the law.

In *Hamling v. United States*, 418 U.S. 87, 104–05, 94 S.Ct. 2887, 2901, 41 L.Ed.2d 590, 613 (1974), the United States Supreme Court held that a juror could draw upon "his own knowledge of the views of the average person in the community or vicinage from which he comes" in determining what the community standard is. *Id.*, 418 U.S. at 104, 94 S.Ct. at 2901. The court in *Hamling* was dealing with the question of whether the standard should be nationwide, and was not called upon to consider how a jury should assess a statewide standard. Based upon the general proposition quoted from *Hamling* and upon our supreme court's decision in *State v. Bartanen*, 121 Ariz. 454, 591 P.2d 546, *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979), in which it was noted that as a practical matter jurors, in considering the state standard, would resort to their knowledge of how people in their own communities felt on the issue, we believe that a juror may consider, as *a* factor, the views of the average person in the juror's community in arriving at an assessment of the statewide standard.

It is true that, narrowly read, the prosecutor's argument can be interpreted to mean that the jury can apply a purely community standard. It can also be interpreted to mean that the jury can determine the state standard from what they know of their own community. This case is a good example of why an objection is necessary to preserve an issue for review. Had the defendant objected and called the judge's attention to the order in limine, the judge might have stricken the argument or vacated the order in limine and required the prosecutor to clarify the point. As it is, we see no fundamental error in what occurred.

The defendant bolsters his position with the statement that he would have peremptorily challenged a certain juror had he known that that juror, who resided in a community counsel perceived to be of a conservative nature, would be told to look only to her own community standard. This contention misstates the state's argument taken as a whole. The essence of what the jury was told is that it could draw on local standards to divine the statewide standard. The defendant's failure to object waives this point, which is, at best, attenuated.

## ISSUES RELATING TO QUESTIONS ABOUT THE HARM CAUSED BY PORNOGRAPHY

The defendant asserts that the prosecutor improperly asked the expert witnesses questions regarding the harm caused by pornography. Although this was the object of a pretrial motion in limine, defendant concedes, and the record shows, that the trial court never ruled on the motion. Defendant cites a number of specific instances in which the prosecutor delved into the harm caused by pornography. We note that this did not occur in the state's case-in-chief. Rather, it happened only after the defense had called expert witnesses in an attempt to show that the videotapes had value under the third part of the *Miller* test. As noted by the state, counsel objected to only one portion of the complained-of-testimony. That objection was sustained, and the prosecutor ordered to avoid the issue, which he subsequently did.

In addressing this issue during the defendant's motion for a new trial, the trial court noted, "no contemporaneous objection was made, apparently for tactical reasons, and ... no prior ruling on the motion in limine had been made." Because no contemporaneous objection was made, the defendant has waived the argument. *State v. DeNistor*, 143 Ariz. 407, 694 P.2d 237 (1985). The defendant's motion in limine did not preserve the argument because counsel never obtained a ruling on it. *Lujan*, 136 Ariz. at 328, 666 P.2d at 73.

The defendant also complains that the state violated an order in limine precluding:

Any mention or insinuation that minors will be or were exposed to these materials or had access to them or will have

access to them. The Defendant is not charged with such.

The defense called Dr. Phillip W. Esplin, a psychologist, to give his opinion about whether certain things depicted in the videotapes were obscene. The defendant selects the following testimony from the state's cross-examination as violative of the order in limine.

Q [The Prosecutor]: Doctor, let's move on. You have a clientele that you treat which suffer from various kinds of emotional disturbances. Would that be a fair way of saying it?

A [By Dr. Esplin]: Some do.

\* \* \* \* \* \*

Q Do you treat people who are the victims of child molest?

A Yes I do.

Q Do you treat both the child molester or the molestee?

A I have treated both.

\* \* \* \* \* \*

Q Doctor, among the patients you treat do you also treat people who are incest victims?

A Yes.

\* \* \* \* \* \*

Q Doctor, answer this for me, if you would. Do small children have a natural resistance to being molested by anyone?

\* \* \* \* \* \*

A I would—it would be my opinion that children from about 4 or 5 up would have developed a sense of privacy with regard to their anatomy,....

\* \* \* \* \* \*

Q For the child molester to effectively break down that sense of privacy, that wall of resistance, what does the child molester have to do?

A Well, it varies. Sometimes they will break it down through coercion, through threats, sometimes intimidation. Sometimes they won't even recognize the barrier if they are that self-absorbed. Other times they will use more subtle means such as enticement.

They may seduce their victims through guises of various kinds, such as teaching them sex education. They may try to introduce sexual topics through sexually explicit materials. You know there's a variety of patterns that perpetrators utilize in seduction of their victims.

Q This is actually a specialty of yours, isn't it Doctor, this particular narrow area of psychology?

A I spend an awful lot of time working with these types of situation.

Q Have you found—because you mentioned sexually explicit material, have you found that sexually explicit films are sometimes used by adults to break down the will and resistance of children?

A Yes I have.

■ Again, the defendant did not object to this line of questioning. The state contends that these questions do not violate the order in limine as there was no insinuation that minors will be or were exposed to these materials. Taken literally, this line of questioning, which was directed at the effect of pornography on children in general as opposed to whether children would actually see these videotapes, does not violate the order in limine. Whatever argument might be made that it somehow violated the spirit of the order in limine was waived by the failure to object. *See Briggs*, 112 Ariz. at 382, 542 P.2d at 807.

## FAILURE TO GRANT THE MOTION FOR ACQUITTAL

■ The defendant's next argument is that the trial court should have granted his motion for acquittal because the state presented no expert testimony to prove that these videotapes were obscene. We disagree. In *State v. Shin Ching Lin*, No. 17962-SA (Ariz.Sup.Ct. July 2, 1986), the supreme court held that the state need only present the alleged obscene item to the jurors:

We hold that the State is not required to present expert testimony on any element of obscenity once the material is placed in evidence.

*Id.*, slip op. at 16.

The defendant contends that *Lin* was wrongly decided, and "is even more

wrong" based upon the recent United States Supreme Court decision in *Pope v. Illinois*, 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). In *Pope*, the Court held that the jury should not be instructed to apply a community standard in deciding the third part of the *Miller* test, that is, the question of whether the material had any literary, artistic, political, or scientific value. Instead, the Supreme Court held that the jury should apply a reasonable person standard to this question.

The defendant argues that the Arizona Supreme Court was not aware of this distinction when it decided *Lin*, and that had it known of this difference, i.e., between the community standard and reasonable person standard, it would not have ruled that expert testimony is not necessary. However, as *Pope* points out, the Supreme Court in *Miller* never discussed the question of what value the allegedly obscene material might have in terms of a community standard. *Pope* may have clarified *Miller*, but it did not change it. We cannot say that *Pope* would have had an impact on our supreme court's thinking in *Lin*. If *Lin* was wrongly decided, we do not have the power to change it.

■ In a related argument, the defendant contends that the jury should not have been instructed as to the standard enunciated in *Pope*, as *Pope* was not decided until after the defendant was charged. As we note above, *Pope* does not change the standard set out in *Miller*. There was no error in instructing the jury on a standard the *Pope* court found implicit in *Miller*, and therefore in accord with our statute. *See also State v. Bartanen*, 121 Ariz. 454, 591 P.2d 546 (1979), in which the Arizona Supreme Court rejected a similar argument.

■ The defendant next contends that the trial court should have directed a verdict of acquittal pursuant to *Jacobellis v. Ohio*, 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). Under *Jacobellis*, courts have a constitutional duty to determine if items are obscene. The trial judge in this case told the parties that he felt these videotapes were not obscene. The defendant argues that if the trial judge felt

that way, he erred in submitting the issue of obscenity to the jury.

The defendant is mistaken about what the trial judge did. The judge did not conclude that the videotapes were not obscene as a matter of law. Instead, he submitted the matter to the jury on the basis that the record "could support a finding that these matters are obscene." The judge's statement that if he were the trier of fact he would not find the movies obscene was merely a personal observation of no legal significance.

We have viewed the copy of "Between the Cheeks," which was shown to the jury. The film depicts acts of intercourse, anal intercourse, fellatio and cunnilingus interspersed with moronic "classroom" discussions of these activities. We, like the trial judge, cannot say that as a matter of law, "Between the Cheeks" is not obscene. *See and compare State v. Navarrette*, 115 Ariz. 574, 566 P.2d 1050 (App.1977).

## ALLOWING THE VIDEOTAPES IN THE JURY ROOM

■ Before the jury retired to deliberate, defense counsel argued that it was unduly suggestive to allow a television monitor and VCR be placed in the jury room during deliberations. The state took no particular position on the matter, and the trial judge agreed that the equipment should remain outside the jury room unless the jury requested access to it. Unbeknownst to counsel and the judge, and without a request from the jury, the bailiff, at some time during deliberations, placed the equipment in the jury room. The defendant contends that this created error. He says that placing the equipment in the jury room was a comment on the evidence because it suggested that the jury should review the videotapes. He goes on to say that allowing the jury to review the videotapes, combined with the way in which the prosecutor emphasized their contents during closing argument, placed undue emphasis on the videotapes and thus deprived him of a fair trial. We disagree.

The videotapes were properly admitted into evidence. We do not even know from the record whether the jury actually played them in the jury room, but they certainly had every right to do so. The tapes were the essence of the state's case-in-chief. *See Lin,* slip op. at 11, 15..

In *State v. Snowden,* 138 Ariz. 402, 675 P.2d 289 (App.1983), the defendant argued that tape recordings of the robbery he committed unduly influenced jury verdicts where post-verdict voir dire of the jury revealed the jury had played the tape eight times while deliberating. Division Two of this court found no abuse of discretion in the trial court's giving the tape (and implicitly, the tape recorder) to the jury. The court noted that the exhibit was clearly admissible, and the fact that it was played eight times had no legal consequence.

The defendant goes on to suggest that had he known that the equipment was going to be placed in the jury room he would have tailored his strategy differently and objected to the state's stress on contents of the videotapes themselves. In view of the fact that the jury had an absolute right to review the videotapes at will, these arguments are not persuasive.

The defendant's next argument, related to the previous one, is that the presence of the video equipment violated Rule 22, Arizona Rules of Criminal Procedure, 17 A.R.S. Rule 22.2 provides:

Upon retiring for deliberation the jurors shall take with them:

a. Forms of verdict approved by the court, which shall not indicate in any manner whether the offense described therein is a felony or misdemeanor unless the statute upon which the charge is based directs that the jury make this determination,

b. All written or recorded instructions given by the court,

c. Their notes, and

d. Such tangible evidence as the court in its discretion shall direct.

As pointed out by the state, Rule 22.2 only provides what the jury *shall* take with them to the jury room, not what they shall *only* take.

The defendant goes on to argue that since the jury had to judge the videotapes as a whole, it was error to allow a VCR player to be placed in the jury room without supervision because the jury might have looked at only part of the tapes. He cites Rule 22.3, Arizona Rules of Criminal Procedure, which provides for the court to monitor whether, how, and what testimony shall be read back to the jury so that undue prominence is not given to only a part of it.

The videotapes were exhibits, not testimony, so Rule 22.3 does not expressly apply. However, since the reason behind the rule would seem to apply to situations in which the trier of fact must consider the whole of an exhibit, the defendant expresses a valid concern. Trial judges would be well advised to tell juries that if they elect to review such an exhibit, they should review it in its entirety. We need not go further on this point because the defendant's position is unsupported by the record, nothing in which tells us if the jury ever reviewed the videotapes or any part of them. The fact that they could and might have done so is not sufficient to require reversal.

## PRIOR RESTRAINT

The defendant's last argument is that the Arizona law which allows the imposition of substantial fines chills the exercise of First Amendment rights. The mere existence of a fine provision is not an unconstitutional prior restraint. *See Polykoff v. Collins,* 816 F.2d 1326 (9th Cir.1987); *State v. Feld,* 155 Ariz. 88, 97, 745 P.2d 146, 155 (1987), *cert. denied* 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 482 (1988).

Pursuant to A.R.S. § 13–4035, we have reviewed the entire record for fundamental error, and have found none. For the above reasons, the conviction and sentence are affirmed.

GRANT, C.J., and FIDEL, J., concur.