911 P.2d 609

**The STATE of Arizona, Appellee,**

v.

**Jack Hubert HUMMER, Appellant.**

**No. 2 CA–CR 93–0596.**

Court of Appeals of Arizona, Division 2, Department A.

Sept. 26, 1995.

Redesignated as Opinion Oct. 31, 1995.

Review Denied Feb. 21, 1996.*

---

* Corcoran, J., of the Supreme Court, did not participate in the determination of this matter.

Grant Woods, the Attorney General by Paul J. McMurdie and Joseph T. Maziarz, Phoenix, for Appellee.

Susan A. Kettlewell, Pima County Public Defender by Mary Brigid Dwyer, Tucson, for Appellant.

## OPINION

FERNANDEZ, Judge.

Jack Hubert Hummer was convicted following a jury trial of two counts of sexual conduct with a minor, A.R.S. § 13–1405 (counts one and three), three counts of furnishing obscene material to a minor, A.R.S. § 13–3506 (counts four, five, and six), and one count of molestation of a minor, A.R.S. § 13–1410 (count seven). The jury found that he had two prior felony convictions, and the trial court sentenced him to three consecutive life terms on counts one, three, and seven. Hummer also received concurrent, aggravated sentences of twelve years each on counts four, five, and six, to run consecutively to the life sentences. On appeal, Hummer makes numerous assignments of error, none of which merits reversal.

## BACKGROUND

The evidence, viewed in the light most favorable to sustaining the verdict, *State v. Zmich*, 160 Ariz. 108, 770 P.2d 776 (1989), shows that Hummer was arrested in August 1992, after more than one year of sexual behavior with four boys.

At trial, brothers J. and J.H., both minors, testified to several instances in which Hummer had engaged in sexual behavior with them. The boys, who lived in the same trailer park as Hummer, described how Hummer had, at various times in 1991 and 1992, placed his penis inside their bottoms. The brothers further testified that Hummer had, at various times, made them watch pornographic videos while he masturbated. These activities sometimes involved another minor, C.,[1] a friend of J. and J.H. In February 1992, the boys' mother noticed bite marks on J.'s neck and asked about them. J. said that Hummer had bitten him.[2] A week later, under further questioning by their mother, J. and J.H. disclosed the extent of Hummer's sexual behavior with them. The Pima County Sheriff's Department was contacted; the boys and Hummer were questioned, but Hummer was not arrested.

Hummer then moved to another trailer park and befriended G., a minor. G. testified Hummer had asked him to visit him to do yard work for pay. While there, G. was persuaded to massage Hummer's legs and to touch Hummer under his shorts. G. said that Hummer told him that the massage was what G. was being paid for. In addition, G. testified that Hummer moved in such a way that he could not avoid touching Hummer's penis. Later that day, G. accompanied Hummer to a theater where, during the movie, Hummer put his arm around G. and squeezed his leg. G. reported this behavior to his mother. Hummer was arrested after G.'s mother called authorities.

## JURY INSTRUCTIONS

### a. Attempt instruction

■ Hummer contends that the trial court deprived him of a fair trial by denying his request for a jury instruction on the lesser-included offense of attempted molestation of a child. A criminal defendant is entitled to a jury instruction on any theory of the case reasonably supported by competent evidence. *State v. Reid,* 155 Ariz. 399, 747 P.2d 560

(1987). *See also State v. Celaya,* 135 Ariz. 248, 660 P.2d 849 (1983) (reversible error to deny request for lesser-included theft instruction where evidence supported it).

■ Hummer argues that the instruction on attempted child molestation was warranted by G.'s testimony that he "accidentally bumped" Hummer's penis. We disagree. G.'s state of mind is not at issue; we review for evidence that Hummer knowingly caused G. "to directly or indirectly touch [his] private parts." A.R.S. § 13–1410. The evidence shows that G. touched Hummer as he rubbed Hummer's legs under his shorts. G. testified that Hummer moaned when he touched him and said that "it felt good." Even if G. had not intended to touch Hummer's penis, the evidence shows that Hummer knowingly caused the contact by telling G. where to rub him and allowing him to do so. On this record, we conclude that no evidence supported the instruction on the attempt offense. The trial court, therefore, did not err by denying the instruction.

### b. Unanimous verdict

■ Similarly, we reject as meritless Hummer's contention that the trial court erroneously failed to instruct the jury in writing that its verdicts had to be unanimous. Because Hummer neither requested the instruction, nor objected when one was not given, the issue is waived. *State v. Gendron,* 168 Ariz. 153, 812 P.2d 626 (1991).

■ In any event, the trial court instructed the jury from the bench that "[a]ll twelve of you must agree on a verdict. All twelve of you must agree whether the verdict is guilty or not guilty." Moreover, the jury was instructed in writing to "not hesitate to change an opinion if you are convinced it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision."

We conclude that the jury was properly instructed as to how to reach its verdicts.

---

1. Hummer was acquitted of the charge of sexual conduct with C.

2. On these facts Hummer was indicted for aggravated assault, but the state withdrew the charge before trial.

## VIDEOTAPE

Hummer next raises two arguments pertaining to the pornographic videotape the state placed in evidence. The state alleged that Hummer was guilty of furnishing harmful materials to minors because he had played the tape for three boys. Portions of the tape, which contained commercially produced movies entitled *Deep Inside Her, Tracy and the Bandit,* and *She's So Fine,* were played at trial and were available to jurors during deliberations.

■ Hummer first contends that the trial court erred by allowing the jury to determine without expert testimony if the tape contained material that was harmful to minors. We disagree. To convict Hummer of furnishing obscene or harmful material to minors, the jury had to, in pertinent part, "apply[ ] contemporary state standards with respect to what is suitable for minors...." A.R.S. § 13–3501(1)(a). Expert testimony is appropriate when the trier of fact cannot understand the evidence or determine a fact in issue without specialized knowledge. Ariz. R.Evid. 702, 17A A.R.S. Hummer cites no authority, nor are we aware of any, to support the proposition that expert testimony is required before the jury can apply this standard. Indeed, there is case law to the contrary. *See, e.g., State ex rel. Collins v. Superior Court,* 163 Ariz. 246, 787 P.2d 1042 (1986) (jurors do not need expert testimony to determine what is obscene).

■ Hummer also contends that, because the jury had to determine if the videotape was obscene "taken as a whole," A.R.S. § 13–3501(1)(a)(i), the trial court erred by allowing the state to fast forward through portions of it. Hummer waived this argument by failing to object at trial. *Gendron.* Even assuming the issue was not waived, we find no error. After the tape was played in court, the trial judge said, without Hummer objecting, that the jury "was fully aware of what the contents of the films were."

■ We reject Hummer's related argument that the trial court erred by not instructing the jury that it had to view the entire videotape if it chose to view it at all during deliberations. In *State v. Lichon,* 163 Ariz. 186, 786 P.2d 1037 (App.1989), Division One of this court advised trial courts in obscenity cases to instruct juries that, if they want to review the tape in the jury rooms, they should not review it piecemeal. Here, however, as in *Lichon,* nothing in the record "tells us if the jury ever reviewed the videotape[ ] or any part of [it]. The fact that [the jury] could and might have done so is not sufficient to require reversal." *Id.* at 193, 786 P.2d at 1044.

## MEDICAL TESTIMONY

■ Hummer next complains the trial court denied him a fair trial by allowing testimony from Dr. Michael Aldous, the physician who examined J., J.H., and C. for evidence of sexual abuse. We review the admission of expert testimony for abuse of discretion. *State v. Mincey,* 141 Ariz. 425, 687 P.2d 1180, *cert. denied,* 469 U.S. 1040, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984). Hummer contends that because the doctor testified that the boys showed no physical signs of sexual abuse, such as anal injuries or infections, the testimony was elicited only to bolster the boys' credibility. We disagree.

■ As noted above, expert testimony may assist the jury to understand evidence and to determine fact issues. Ariz.R.Evid. 702, 17A A.R.S. Dr. Aldous testified that the absence of evidence of sexual abuse is not unusual in minors. Because evidence of sexual abuse is within the specialized knowledge of medical experts and because such evidence may be of key importance in trials of this nature, the jury is entitled to expert testimony on the issue. Without such testimony, defendants could argue unfairly to juries that the absence of physical evidence implies that no sexual abuse occurred. The trial court did not abuse its discretion in allowing Dr. Aldous to testify.

## UNCONSTITUTIONAL STATUTE

■ Hummer was convicted for furnishing pornographic materials to the victims in violation of A.R.S. § 13–3506(A), which provides that it is "unlawful for any person, with knowledge of the character of the item involved, to recklessly furnish, present, pro-

vide, make available, give, lend, show, advertise or distribute to minors any item which is harmful to minors." Hummer contends the statute effectively lacks a scienter element, citing *Ripplinger v. Collins*, 868 F.2d 1043 (9th Cir.1989), in which the Ninth Circuit Court of Appeals struck down the definition of "knowledge of the character" found in A.R.S. § 13–3501(3)(a). The *Ripplinger* court said that the definition "may allow conviction of one who knows (or should know) that material contains limited nudity or sexual activity, but does not know that the general nature or character of the item could render it obscene," thereby chilling free speech. *Id.* at 1056. Because of *Ripplinger*, Hummer argues, § 13–3506(A) imposes strict liability. Thus, he claims, the trial court erred by allowing the state to prosecute him under the molestation statute. We reject this argument.

■ Ninth Circuit interpretations of Arizona law do not bind Arizona courts. *See, e.g., State v. Vickers*, 159 Ariz. 532, 768 P.2d 1177 (1989), *cert. denied*, 497 U.S. 1033, 110 S.Ct. 3298, 111 L.Ed.2d 806 (1990) (Arizona Supreme Court refuses to follow Ninth Circuit's invalidation of Arizona death penalty statute). Moreover, as the state argues, *Ripplinger* may be doubtful authority in any event. The result in *Ripplinger* was based in part on the absence of guidance from the United States Supreme Court on "the specific sort of mental state 'requisite to a constitutionally permissible prosecution'" under obscenity statutes. 868 F.2d at 1055 (quoting *Smith v. California*, 361 U.S. 147, 154, 80 S.Ct. 215, 219, 4 L.Ed.2d 205 (1959)). Since *Ripplinger*, the Court has addressed the issue in *United States v. X–Citement Video*, — U.S. ——, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994) (child pornography statute), and *Osborne v. Ohio*, 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (child pornography statute). In these cases, the Court suggests that prosecutions under such statutes are constitutional if the statutes include "some element" of scienter. — U.S. at ——, 115 S.Ct. at 472. We see no basis for vacating Hummer's convictions; A.R.S. § 13–3506(A) requires proof that the defendant had "knowledge of the character of the item involved."

## MOTION TO SEVER

■ Hummer next argues the trial court erred by denying his motion to sever count seven (child molestation) from the remaining counts and his motion to sever the counts alleging sexual conduct with a minor from those alleging the furnishing of harmful material to a minor. We review for an abuse of discretion. *State v. Williams*, 144 Ariz. 433, 698 P.2d 678 (1985).

■ Under Rule 13.3(a), Ariz.R.Crim.P., 17 A.R.S., two or more offenses may be joined if they "(1) [a]re of the same or similar character; or (2) [a]re based on the same conduct or are otherwise connected together in their commission; or (3) [a]re alleged to have been part of a common scheme or plan." Count seven, which involved G., was part of Hummer's "common scheme or plan" of befriending minor boys and then engaging in sexual behavior with them at his home. The other counts, all involving J., J.H., and C., also appeared to have been part of that overall plan. In any event, we find no error because, had the motions to sever been granted, evidence from the various counts would have been admissible at each trial under theories such as emotional propensity and absence of accident or mistake. *See, e.g., State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977); Ariz.R.Evid. 404(b), 17A A.R.S. On this record, we conclude that the trial court did not abuse its discretion by denying Hummer's severance motions.

## CHALLENGED JURORS

Finally, Hummer argues that the trial court abused its discretion when it denied his requests to excuse for cause two prospective jurors who eventually served on the jury that convicted him. According to Hummer, Juror D. said that she would be more likely to convict Hummer if he were charged with separate acts against separate children. Hummer also contends that Juror S. should have been excused for indicating that he would tend to believe the testimony of police officers over that of other witnesses.

The trial court shall excuse a juror for cause "[w]hen there is reasonable ground to believe that a juror cannot render a fair and impartial verdict...." Ariz. R.Crim.P. 18.4(b), 17 A.R.S. The trial court determines whether a juror can render a fair and impartial verdict. *State v. Lavers*, 168 Ariz. 376, 814 P.2d 333, *cert. denied*, 502 U.S. 926, 112 S.Ct. 343, 116 L.Ed.2d 282 (1991). We review the court's decision for a clear abuse of discretion. *Id.* "Moreover, the party asserting that the trial court erred in denying a motion to strike a juror for cause has the burden of establishing that the juror is incapable of rendering a fair and impartial verdict." *State v. Davis*, 137 Ariz. 551, 559, 672 P.2d 480, 488 (App.1983) (citation omitted).

The trial court asked the potential jurors if they believed "that the defendant is more likely to be guilty if he is charged with separate acts against children—different children simply from the fact that there may be more than one child and he's accused much [sic] doing separate things to each of those children?" The following exchange then took place between the trial court and Juror D.:

[JUROR D.]: If there's more—that means there's more than one witness, I would probably—if there's more than one witness, if there's, you know, then I would probably think—

THE COURT: We are talking about more than one victim here.

[JUROR D.]: Which would I believe? Probably more than one witness, I would guess, right?

THE COURT: They wouldn't be all witnesses to the same crime necessarily, you know.

[JUROR D.]: I think I'm confused by the question then.

THE COURT: Well, by the mere fact that the defendant is charged with different offenses against different children of the same nature, would that lead you to believe that he's likely to be guilty of all or one of at least one of the charges?

[JUROR D.]: If there is evidence that there was more than one, yeah.

The trial court found that Juror D. could be fair and impartial. While Juror D. initially was confused by the trial court's question, she ultimately answered that her opinion about Hummer's guilt would be based on the evidence, not on the quantity of charges and victims. There is no evidence that she was "incapable of rendering a fair and impartial verdict." *Davis.* We thus find no abuse of discretion.

Similarly, we find no error in the trial court's refusal to excuse Juror S. The trial court asked the potential jurors if any of them would "tend to believe the testimony of a witness who happens to be a police officer any more or any less than [they] would any nonpolice officer witness simply because he's a police officer?" When Juror S. raised his hand, the following colloquy took place:

THE COURT: Yes, sir, Mr. [S.]?

[JUROR S.]: Yes. Honestly, I think I have some tendencies to believe a police officers [sic] more than a random person off the street.

THE COURT: Again, though, you could be objective about the police officer? If the evidence tells you he's wrong, you could—

[JUROR S.]: Certainly. He's a human being.

THE COURT: Okay. All I'm looking for is those who say, I don't care what the evidence is, you know, a police officer is right. You recognize that he's a human being like the rest of us, puts on his trousers, as they used to say, one leg at a time? Okay.

Again, based on this record, we find no error in the trial court's refusal to strike this juror. *See State v. Sexton*, 163 Ariz. 301, 302–03, 787 P.2d 1097, 1098–99 (App.1989) ("When a potential juror's answers demonstrate serious misgivings about the ability to be fair and impartial, that juror should be struck for cause. [Citation omitted.] If a potential juror ultimately assures the trial judge that she can be fair, it is not error to refuse to strike her.").

We have searched the record for fundamental error and have found none. Accord-

ingly, we affirm Hummer's convictions and sentences.

LIVERMORE, P.J., and PELANDER, J., concur.