NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JAMAAL AKEEM PENNINGTON, SR., *Appellant.*

No. 1 CA-CR 24-0092

FILED 12-17-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-001294-001
The Honorable Scott Minder, Judge

**VACATED AND REMANDED IN PART; AFFIRMED IN PART**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Phillip A. Tomas
*Counsel for Appellee*

The Law Office of Kyle T. Green P.L.L.C., Mesa
By Kyle Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Andrew M. Jacobs delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**J A C O B S**, Judge:

¶1 Jamaal Pennington appeals his conviction of one count of sexual conduct with a minor and one count of molestation of a child. The State concedes it misrepresented evidence in its closing argument in a manner that directly impacted a key factual dispute, but because there was sufficient evidence to convict Pennington of sexual conduct with a minor, we vacate Pennington's conviction and remand for a new trial on that charge. There was sufficient evidence to convict Pennington of molestation of a child, and we affirm that conviction.

**FACTS AND PROCEDURAL HISTORY**

¶2 We view the facts in the light most favorable to upholding Pennington's convictions. *See State v. Morgan*, 248 Ariz. 322, 324 ¶ 2 (App. 2020).

¶3 In spring 2018, a missing juvenile called 9-1-1 to turn herself in. This led to an investigation by the Phoenix Police Department's Human Exploitation and Trafficking ("HEAT") unit, which discovered that another juvenile might have been missing as well. A description of the second juvenile was circulated to officers in the area, who located the juvenile the following day after flagging down a stolen vehicle. Officers identified the juvenile as I.H. and determined that she was 14 years old.

¶4 Later that month, police interviews of I.H. led to interviews of Aaleah Barginear, the mother of Pennington's child. The HEAT unit then began surveilling Pennington. Police arrested Pennington on April 16, 2018, on charges related to child sex trafficking. Pennington was indicted on charges of aggravated assault (Counts 2, 4, and 5), child sex trafficking (Counts 1, 3, and 9), sexual conduct with a minor (Count 6), and molestation of a child (Counts 7 and 8).

¶5 While in custody awaiting trial, Pennington called his wife on a recorded line. Pennington told his wife he "put up" I.H. to having sex with Barginear so he could "get some tax bread out of her." Pennington

indicated that he did not know whether I.H. was a minor, but that she could have been. Pennington admitted that he had sex with Barginear and that Barginear and I.H. had sex, but insisted he did not have sex with I.H. At trial, Pennington indicated that he made the phone call "to trick the police[.]"

¶6 At trial, Barginear testified that, in March 2018, she and Pennington had "an on-and-off type relationship." After receiving a tax refund, Barginear contacted Pennington and met with him at the motel where he was staying. After buying cocaine from Pennington's brother, Barginear and Pennington returned to Pennington's room. While walking to the room, Pennington told Barginear that "there was a female in his room[,]" and that "he wanted [Barginear] to have [sex] with this female." When Barginear asked, Pennington told her that the female was 27 years old. When Barginear and Pennington arrived, I.H. was lying in bed. Barginear poured herself a drink and asked I.H. how old she was. I.H. said she was 27. Pennington asked Barginear and I.H. whether they "wanted to" have sex, and Barginear performed oral sex on I.H. Pennington then performed oral sex on Barginear. Pennington then wanted to visit a nearby store. He gave Barginear and I.H. t-shirts to wear as dresses but told them not to wear underwear. Barginear testified she remembered being at the store and being at the hotel before and after but did not remember the walk to and from the store.

¶7 When the group returned to the motel, Pennington and Barginear had sex. I.H. then got upset and ran into the bathroom crying. Barginear told Pennington to check on I.H. When Pennington approached I.H. in the bathroom, I.H. asked him "if he came inside [Barginear] and he replied yes." After Pennington and I.H. returned, Barginear suggested Pennington have sex with I.H. With I.H. on the bed, naked from the waist down, Pennington "went behind" I.H. with "his pants around his ankles" and his penis exposed. Barginear testified that once Pennington got behind I.H., he suddenly "jump[ed] back in a rush to put his pants on." On cross-examination, Barginear testified that she "did not see any penetration" and that Pennington and I.H. did not have sex. Pennington asked Barginear and I.H. to leave the next morning.

¶8 The State's closing argument relied heavily on Barginear's testimony regarding the interaction between Pennington and I.H. in the bathroom, mischaracterizing it as an admission that Pennington ejaculated in I.H., meaning he had sex with I.H.:

> [I.H.] got up and ran to the bathroom crying and [I.H.] asked, [d]id you come in me, and the Defendant said yes. And that's the important part right there. The Defendant said yes. And so while [Barginear] may not have been able to exactly see whether the Defendant put his penis inside of [I.H.'s] vagina, there are circumstances in which you can make a reasonable inference of what happened there based on what [Barginear] observed and what she heard happen afterwards.

In summarizing the events, the State also said the interaction in the bathroom happened after Pennington was behind I.H. with his pants down.

**¶9** When I.H. did not appear to testify at trial, the court granted the State's motion to dismiss Counts 1-5. The court later granted Pennington's motion for a judgment of acquittal on Counts 8 and 9, to which the State stipulated. The court denied Pennington's motion for a judgment of acquittal on Counts 6 (sexual conduct with a minor) and 7 (molestation of a child). The jury convicted Pennington of those two counts. The court later sentenced Pennington to 13 years in prison for Count 6 and to a consecutive 17-year prison term for Count 7.

**¶10** Pennington timely appealed his convictions and sentences. He argues that the State's characterization of Barginear's testimony in closing argument was prosecutorial misconduct and that there was insufficient evidence to convict him of molestation of a child and sexual conduct with a minor.

## DISCUSSION

**I.** **The State Concedes Its Closing Argument Misstated the Evidence, Creating a Reasonable Chance the Error Affected the Jury's Verdict on One Count, Requiring a New Trial on that Count.**

**A.** **The State's Closing Argument Misstated the Evidence in a Way That Created Fundamental, Prejudicial Error.**

**¶11** Pennington argues the State's closing argument misrepresented Barginear's testimony by incorrectly suggesting she stated that Pennington ejaculated in I.H., when she testified instead that Pennington ejaculated in Barginear. Pennington is correct on this point. The State likewise agrees and argues Pennington should receive a new trial on the charge of sexual conduct with a minor.

**¶12**         Yet because Pennington did not object to the State's closing argument, we must determine if the error to which the State confesses is both fundamental and prejudicial.  *See State v. Escalante*, 245 Ariz. 135, 140 ¶ 12 (2018).  "Error is fundamental if it goes to the foundation of a case, takes away an essential right, or is so egregious that a defendant could not have received a fair trial."  *State v. Murray*, 250 Ariz. 543, 548 ¶ 14 (2021).

**¶13**         We agree with the parties that the error was fundamental because, as the State concedes, it "directly impacted a key factual dispute— i.e.[,] whether Pennington penetrated [I.H.]"  We likewise agree with the State that the misstatement of the record was "emphasized and highlighted to the jury as an important piece of evidence for [it] to consider."  The record, therefore, shows that the fundamental error resulted in prejudice.  *See Escalante*, 245 Ariz. at 144 ¶ 29 (error is prejudicial if it "deprived [the defendant] of the opportunity for the jury to render a verdict" untainted by the asserted misconduct); *see also State v. Dansdill*, 246 Ariz. 593, 608 ¶ 60 (App. 2019) (improper arguments made repeatedly were prejudicial); *cf. State v. Sharp*, 193 Ariz. 414, 422 ¶ 23 (1999) (no prejudice when prosecution did not emphasize improper evidence at trial).  We thus vacate Pennington's conviction for sexual conduct with a minor.

> **B.** **Pennington May Be Retried for Sexual Conduct With a Minor Because There Was Sufficient Evidence to Convict Him of That Offense.**

**¶14**         While we agree that the State's comments in closing argument warrant a new trial on the sexual conduct with a minor charge, we must still address Pennington's argument that there was insufficient evidence to support the conviction.  *See State v. Roberts*, 126 Ariz. 92, 95 (1980) (recognizing that while the court reversed conviction because of error to exclude witness, it must address insufficient evidence argument because of double jeopardy considerations); *State v. Ortiz*, 120 Ariz. 384, 386 (1978) (holding that a defendant cannot be re-tried when conviction is reversed on appeal based on insufficient evidence).  Because there was sufficient evidence to convict Pennington of this charge, a second trial does not offend constitutional protections against double jeopardy.

**¶15**         We review insufficient evidence claims like Pennington's de novo and "must decide whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Dansdill*, 246 Ariz. at 600 ¶ 19 (cleaned up).  The credibility of witnesses is a matter for the trier of fact, and not this court.  *See State v. Lee*, 151 Ariz. 428, 429 (App. 1986).  Thus, "[w]e . . . 'may not re-weigh the facts or disregard

inferences that might reasonably be drawn from the evidence,' and we may not find the evidence insufficient 'when reasonable minds may differ.'" *Dansdill*, 246 Ariz. at 600 ¶ 19 (quoting *State v. West*, 226 Ariz. 559, 563 ¶ 18 (2011)).

**¶16** "A person commits sexual conduct with a minor by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405(A). Sexual intercourse is "penetration into the penis, vulva or anus by any part of the body or by any object or masturbatory contact with the penis or vulva." A.R.S. § 13-1401(A)(4).

**¶17** Pennington argues there was insufficient evidence to convict him of sexual conduct with a minor because "the State did not present any evidence that the [Pennington] had sexual intercourse with I.H." and the only "witness gave testimony that was exculpatory to [Pennington]." He also emphasizes the State's mischaracterization of this testimony during closing arguments. The State counters that "there was sufficient evidence to allow the jury to infer that when Pennington went behind I.H., he engaged in sexual conduct with her because both of their genitals were exposed and Pennington had his hands around [I.H.]'s waist" while she was naked from the waist down on the bed "on her hands and knees[.]" The State emphasizes that "the jury is not expected to leave their common sense and previous life experiences at the court house steps."

**¶18** Pennington has failed to show that no rational trier of fact could find the evidence sufficient to find him guilty beyond a reasonable doubt. *See State v. Greene*, 192 Ariz. 431, 436 ¶ 12 (1998). Three officers testified that based on I.H.'s date of birth, she was 14 years old when she was picked up in April 2018, showing she was under the age of 18 at the time of the charged offenses. Given Barginear's testimony about how I.H. and Pennington were positioned, a reasonable jury could conclude that some penetration occurred. *See State v. Pollock*, 57 Ariz. 415, 418 (1941); *Dansdill*, 246 Ariz. at 600 ¶ 19. While Barginear did testify that she did not see penetration and that I.H. and Pennington did not "have sex[,]" it is for the jury to assess a witness's credibility and decide what testimony to accept and what to reject. *See Lee*, 151 Ariz. at 429. Barginear admitted she was under the influence of drugs and alcohol and that her memory of the evening was impaired, allowing a reasonable jury to accept some portions of her testimony and reject others. Considering this evidence, Pennington has not shown that there is no hypothesis on which Pennington could have been convicted. *See State v. Maldonado*, 206 Ariz. 339, 343 ¶ 17 (App. 2003).

Thus, there was sufficient evidence to convict Pennington of sexual conduct with a minor.

## II. There Was Sufficient Evidence to Convict Pennington of Molestation of a Child.

**¶19**        Pennington argues there was insufficient evidence to convict him of molestation of a child because Barginear's testimony showed he directed her to have sex with I.H., but not that he actually caused her to do so. *See Dansdill*, 246 Ariz. at 600 ¶ 19 (requiring court to "decide whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt[]") (cleaned up).  He emphasizes Barginear's testimony that he asked Barginear and I.H. if they wanted to have sex and that Barginear "just did it."

**¶20**        Relevant here, "[a] person commits molestation of a child by intentionally or knowingly engaging in or *causing a person to engage* in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age."  A.R.S. § 13-1410(A) (emphasis added). Sexual contact includes "any direct or indirect touching, fondling or manipulating of any part of the genitals . . . by any part of the body . . . or causing a person to engage in such contact."  A.R.S. § 13-1401(A)(3)(a).  As applicable here, "[c]onduct is the cause of a result when . . . [b]ut for the conduct the result in question would not have occurred[,]" and the relationship between the conduct and results satisfies any other statutory requirements.  A.R.S. § 13-203(A).

**¶21**        Barginear testified Pennington never forced or caused her to do anything she did not want to do.  But whether Barginear wanted to participate is irrelevant to whether the jury properly could find Pennington caused Barginear to engage in sexual contact with I.H.  *See State v. Hummer*, 184 Ariz. 603, 606 (App. 1995) (holding that the state of mind of the person caused to make sexual contact "is not at issue" and finding that defendant knowingly caused sexual contact by instructing victim to rub defendant's legs and touch under defendant's shorts); *State v. Brock*, 248 Ariz. 583, 587 ¶ 4, 592 ¶ 24 (App. 2020) (finding evidence sufficient to convict defendant of child molestation where defendant and victim had online relationship in which defendant "encouraged" victim to engage in online sexual activity even though victim initially willingly participated in that activity).

**¶22**        There was sufficient evidence from which a reasonable jury could find that but for Pennington's introduction of, and direction to Barginear, she would not have had sexual contact with I.H.  *See* A.R.S. § 13-

203(A)(1) (requiring showing that "[b]ut for the conduct the result in question would not have occurred[]"). Barginear testified Pennington told her "he wanted [her] to have [sex] with [I.H.]" and then brought Barginear to the motel room where I.H. was lying in bed and asked the women if they wanted to have sex. Pennington likewise later told his wife he "put [I.H.] up to" having sex with Barginear so he could "get some tax bread out of her." And as noted above, officer testimony sufficiently established that I.H. was under the age of fifteen. Thus, there was sufficient evidence to convict Pennington of child molestation.

## CONCLUSION

**¶23** For these reasons, we reverse Pennington's conviction of sexual conduct with a minor and order a new trial, but we affirm his conviction of molestation of a child.

